Following an ore tenus proceeding, the trial court divorced the parties on June 20, 1995, ordering, among other things, that the wife have possession of the marital house and the five acres upon which it is located, until the parties' minor child reaches 21 years of age. The house and land are then to be sold, with the wife receiving 75% of the proceeds from the sale and the husband receiving 25% of the proceeds. The court ordered the husband to pay the mortgage payments on the house until it is sold. In addition, the court awarded the wife a portion of three insurance payments that the husband is to receive in the future from a personal injury settlement. The court also awarded the husband and the wife certain items of personal property. The husband was awarded his 1985 pickup truck; one-third of the family photographs; a 48-inch color television; and his personal clothing, weapons, and tools. The wife was awarded the possessions located at the marital home, including a 1989 Chrysler New Yorker automobile, furniture, and appliances. The husband moved the court to reconsider its ruling, or, in the alternative, for a new trial.
On September 15, 1995, the court amended its judgment, ordering that, in the event of the husband's death, the wife would not receive any monies from the husband's personal injury settlement, other than that amount awarded in the original divorce judgment. Further, the court awarded the husband the 48-inch color television "and any other items not listed in the Judgment . . . that [the wife] desires to let him have." The husband appeals, contending that the court abused its discretion in its division of the parties' assets and in awarding the wife a portion of the *Page 607 
payments he is to receive from his personal injury settlement.
The parties were first married in February 1968 and divorced in November 1984. Four children were born of the marriage, three of whom are now adults. In July 1985, the husband was involved in an automobile accident in which he sustained severe injuries. He remained in a coma for approximately two weeks following the accident. As a result of the accident, the husband lost all of his long-term memory. He has no memory of events that occurred before the accident, even as those events relate to his childhood, his children, the circumstances surrounding his first marriage and divorce, his family, and his employment. His only knowledge of these matters is what he has been told by others.
The wife testified that before the accident, she and the husband did not date; that she had had weekly contact with him when he came to the house to exercise his visitation rights with the children; and that after the accident they began dating and considering remarriage. However, she had previously testified by deposition that at the time the accident occurred, she and the husband "were contemplating getting back together." At trial, the wife stated that immediately after the accident, the husband had no memory of her or the children, but that "he could remember his little girlfriend he had in Huntsville." The wife further testified that about two weeks after the husband had come home from the hospital, he lost all his memory, and that she had told him that before the accident occurred they had been contemplating getting back together.
One witness stated that after the parties' first divorce, the parties had had a "bad" relationship and "were very bitter at one another." He testified that he had voiced to the wife his objection to the remarriage because of the hostile nature of the parties' relationship and the husband's injury, which had resulted in his memory loss. Another witness testified that the husband had, "right before" the accident, told her that he hated the wife. The parties ultimately remarried in May 1987.
In January 1986, before the parties had remarried, the husband sued Overnite Transportation Company, Inc., seeking damages for the injuries he had sustained in the automobile accident. In February 1988, the husband entered into a settlement agreement with Overnite. The wife was not a party to the lawsuit, nor to the settlement agreement. The terms of the settlement agreement provided for an immediate cash payment of $360,000 to the husband and additional payments of $40,000 payable on March 1, 1993; $60,000 payable on March 1, 1998; $120,000 payable on March 1, 2003; and $180,000 payable on March 1, 2008. That settlement agreement also provides for a monthly annuity of $2300 for the remainder of the husband's life, with 20 years' payments being guaranteed. In addition to the $2300 monthly annuity, the husband also receives $984 per month in Social Security disability benefits.
In March 1988, the parties purchased a house and five acres of land for $92,500. The property was mortgaged for 15 years; at the time of the hearing, $68,770 was left owing on the mortgage. The monthly mortgage payment on the property is $1024, and is paid by the husband. The parties built a barn on the property, and they both testified that they believe the property to be worth approximately $125,000. The wife stated that without the money received from the husband's settlement, they would not have been able to purchase the house and the land.
Both the husband and the wife became involved in extramarital relationships. The wife testified that she had a friendship with a married man, that they at one time talked to each other by telephone on a daily basis, and that they would meet at a walking trail. She denied ever having a sexual relationship with him and stated that she now only talks to him occasionally. The husband disapproved of this relationship and asked the wife to terminate it; however she refused to do so.
The husband became involved in a relationship with another woman and moved out of the marital home in 1993. The husband admitted to the affair and stated that it was continuing at the time of the trial. Although *Page 608 
the parties attempted to reconcile, their attempts at reconciliation failed; the wife sued the husband for a divorce in May 1994.
The husband first contends that the court erred in its division of the parties' assets. In reviewing a judgment in a divorce case in which the trial court was presented conflicting evidence ore tenus, we are governed by the ore tenus rule. Under this rule, the trial court's judgment will not be disturbed on appeal unless it is plainly and palpably wrong.Hartzell v. Hartzell, 623 So.2d 323 (Ala.Civ.App. 1993). Matters of property division rest soundly within the trial court's discretion and its determination regarding those matters will not be disturbed on appeal unless its discretion was plainly and palpably abused. Goodwin v. Estate of Goodwin,632 So.2d 500 (Ala.Civ.App. 1993). A division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Pride v. Pride,631 So.2d 247 (Ala.Civ.App. 1993). When dividing marital property, a trial court should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage. Hartze1l, supra.
At the time of the hearing, the wife was 45 years old and had a high school education. She was employed as an insurance clerk, earning $6.13 per hour, with net earnings of approximately $776 per month. In addition to her salary, she also receives $514 per month in Social Security disability benefits, for the benefit of the minor child, because of the husband's disability. The wife testified that the parties' two adult sons and minor child live in the marital home with her and that she could not afford to live there if the husband did not make the $1024 monthly mortgage payment. She further stated that after paying her monthly expenses, including utilities, insurance, food, and other miscellaneous expenses, she has no money left. The wife also testified that she has a retirement plan offered through her employer, but that she does not know how much she has in the plan, and that she has no savings account. She had no health problems, except for high blood pressure, which she controls with medication.
The husband was, at the time of the hearing, 50 years old and totally disabled, as defined by Social Security. He relies solely on his monthly annuity and Social Security disability benefits for income. Before the automobile accident, the husband had been employed as a "material controller," earning approximately $22,000 annually; however, he has been unable to work since the accident, except occasionally as a farmhand. He has no driver's license, having failed the driver's test four times. The husband has difficulty remembering directions, locations, and scheduled appointments, and he requires assistance from others in handling his financial affairs.
Dr. Roger Rinn, a licensed psychologist, administered several neuropsychological tests to the husband. Dr. Rinn stated that the results of those tests indicated that the husband has a "diffuse brain injury," and that that injury is not of a type that would affect him physically, such as causing limping, causing motor skill deficits, or preventing him from communicating. Dr. Rinn further testified that the husband is absent-minded and forgetful and does not concentrate adequately, and that his condition will probably never improve.
"When parties submit themselves to the jurisdiction of the court regarding jointly held property, the court has the discretion to divide the property between the parties upon consideration of the equities and contribution by the parties."Jones v. Jones, 631 So.2d 1052, 1054 (Ala.Civ.App. 1993). See also, Foreman v. Foreman, 379 So.2d 89 (Ala.Civ.App. 1980). Further, "The determination of who originally supplied purchase money for property acquired during a marriage is neither the sole nor the most salutary method of determining the proper division of such property where its acquisition, under all the circumstances, was a joint enterprise." Cox v. Cox,395 So.2d 1027, 1030 (Ala.Civ.App. 1981). Although the parties' assets were acquired *Page 609 
with money derived from the husband's settlement, the wife remained employed throughout the marriage, rearing four children, and contributing to the support of the family. After carefully reviewing the record, with the appropriate presumptions, we conclude that the court did not abuse its discretion in its division of the parties' assets.
The husband next contends that the court erred in awarding the wife a portion of three future payments he is to receive from his settlement. The court awarded the wife $20,000 to be paid from the $60,000 payment due March 1, 1998; $30,000 to be paid from the $120,000 payment due March 1, 2003; and $40,000 to be paid from the $180,000 payment due March 1, 2008.
Section 30-2-51, Ala. Code 1975, states:
 "If either spouse has no separate estate or if it be insufficient for the maintenance of such spouse, the judge, upon granting a divorce, at his discretion, may order to such spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family; provided, however, that the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the trial judge finds from the evidence that such property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage."
(Emphasis added.) In Wilbanks v. Wilbanks, 624 So.2d 605
(Ala.Civ.App. 1993), this court held that a $35,000 inheritance a husband expected to receive in the future was not subject to division under § 30-2-51, because the inheritance had not yet been received. Here, the husband has not yet received the settlement payments; therefore, those monies have not been "used regularly for the common benefit of the parties during their marriage." Further, although the husband entered into the settlement agreement after the parties had married, the accident giving rise to the settlement occurred before the marriage, and the wife was not a party to the lawsuit or to the settlement agreement.
This opinion should not be read to preclude all personal injury settlement proceeds from being considered by a trial court in equitably distributing assets in the dissolution of a marriage. Further, this opinion should not be interpreted, as the dissent suggests, to mean that all personal injury settlements are nonmarital property.
We conclude that, under the peculiar facts of this case, the court erred in awarding the wife a portion of the settlement payments the husband is to receive in the future. That portion of the judgment awarding the wife a portion of those payments is reversed, and the case is remanded for the court to enter a judgment consistent with this opinion.
The wife's request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN and MONROE, JJ., concur.
CRAWLEY, J., dissents.