CRAWLEY, Judge.
Kay “Wheeler (“the wife”) sued Harry S. Wheeler III (“the husband”) for divorce following a 32-year marriage. Three children were born of the marriage; none of the children were minors at the time of the divorce proceedings.
During most of the marriage the husband had been employed as a controller for International Paper Company (“International”). The husband held a degree in finance; the wife had helped the husband complete the last year and a half of his schooling. During the time the husband worked for International, he was frequently transferred, causing a number of family moves, mostly within the state of Louisiana; consequently, the wife had not worked much outside of the home. The wife has completed two years of college. The last time the wife worked outside of the home was when the family was living in Moorehouse, Louisiana. At that time she worked as an independent contractor for the Parrish Schools, teaching sex education. The wife testified that, because of her limited experience and education, she does not meet the qualifications for that type of job, according to current standards. The husband was ultimately terminated from International, after 26 years of service, for improper activities that, according to him, were indirectly related to his gambling activities.
After the husband was terminated at International, the Wheelers moved to Gulf Shores, where they rented a condominium. The husband became employed as a night auditor in a local hotel. The family subsequently relocated to Mobile, where they rented a house. Sometime thereafter, the owner of the rental house expressed a desire to sell, and with the help of the wife’s father, who gave the couple the down payment of $12,000, the Wheelers were able to buy the house.
When the Wheelers lived in Mobile, the husband worked at McPhillips Manufacturing (“McPhillips”). The husband was employed there for three years in the position of vice-president and controller. The husband was terminated at McPhillips for unauthorized use of company credit cards *632 in an amount totaling 138,00o.[1] In addition, McPhillips sent demand letters threatening to prosecute the husband for the unauthorized use of the credit cards unless he made restitution of the full amount. The wife took $38,000 out of funds she inherited upon her father’s death to make full restitution for the amount the husband owed to McPhillips so that he would not face criminal charges. When McPhillips terminated his employment, the husband cashed in his 401(k) retirement fund at McPhillips, and the couple used those funds for living expenses.
The husband moved to Orange Beach about a year ago. At the time of the divorce proceedings, the husband was employed at the Sportsman Marina in Orange Beach as dockmaster; he earns approximately $42,000 per year. The husband testified that his monthly gross income was $3,600.
The testimony was disputed regarding the factors that triggered the breakdown of the marriage. The wife testified that the marriage was “wonderful” until the husband’s “secret” gambling problem devastated his career and depleted her inheritance. The husband testified that it was the wife’s drinking problem that caused the marriage to dissolve, and he stated that she had been drinking excessively for 12 to 13 years. The husband further testified that the wife became verbally, and sometimes even physically, abusive when she was intoxicated and that he would lock himself behind a door to escape her wrath. He further testified that on one occasion the wife broke down a locked door in a drunken tirade. The wife testified that, although she was occasionally verbally abusive when she drank, she felt her verbal insults were justified by the husband’s irresponsible conduct. As to the husband’s claims of physical abuse, she pointed out that he was easily able to overpower her. In addition, she testified that he had physically abused her for 30 of the 32 years of their marriage and contended that she was entitled to fight back if she so chose.
The wife submitted evidence of the following marital assets. She presented a copy of her March 7, 2001, investment-account statement, which reflected a value of her Morgan Stanley Dean Witter account at approximately $17,000. This account contained the remainder of the money she had inherited from her father.[2] The wife testified that she had used the funds in the account for the benefit of the marriage; that she had expended $38,000 to repay McPhillips for the unauthorized charges the husband had billed to the company credit card; and that she had paid $17,000 as a down payment on the 1999 Ford Explorer sport-utility vehicle the husband drove. Further, she testified that she used the account for living expenses during part of the time she and the husband were separated. In addition, the Wheelers owned the marital home worth approximately $150,000, subject to a $99,000 mortgage. The 1995 Chevrolet Blazer sport-utility vehicle, driven by the wife, was not subject to any liens or encumbrances. The 1999 Ford Explorer driven by the husband was subject to indebtedness in the amount of approximately $5,000. The Wheelers had a number of marital debts in addition to the husband’s automobile loan and the mortgage indebt *633 edness on the house. The wife had a Spie-gel credit card with a balance owing of $1,200. The husband had a Sears credit card which carried a balance of $1,500. The husband owed HRS, the company that financed the big-screen television he purchased, a balance of $1,200. The Discover Card, used primarily by the husband, reflected a balance owing of $1,700. The husband’s bimonthly earnings statement reflected a gross earnings of $1,615.39, and net earnings of $1,153.62. There was no evidence in the record to indicate the value of the husband’s retirement benefits from International.
When asked by the trial court what she wanted to be given in the divorce judgment, the wife requested the marital home, subject to the mortgage, her Chevrolet Blazer, and her Morgan Stanley account, the value of which was $17,000. The wife also presented a detailed, itemized list of expenses totaling $2,601.81. She stated that she was willing to be responsible for the Spiegel account, but asked the court to make the husband responsible for the remainder of the marital indebtedness, excluding the mortgage.
Both parties are in good health; the wife is 54 and the husband is 55. The husband has a college degree and extensive work experience as a financial auditor. The wife has limited work experience as a teacher and has only two years of college. When the trial court asked the husband what he requested from the divorce judgment, he asked the court to be fair and reasonable in its property division.
In its judgment, the trial court awarded the marital home to the wife, subject to the mortgage indebtedness on it. In addition, the court awarded the wife her Chevrolet Blazer and her investment account with Morgan Stanley Dean Witter with a balance of approximately $17,000. In addition, the trial court directed the husband to pay to the wife periodic alimony in the amount of $1,000 per month. Each party was directed to pay the debts that had been incurred in his or her own name; therefore, the wife was directed to assume responsibility for the Spiegel account, and the husband was directed to assume responsibility for the Discover Card with a monthly payment of $65, for the Sears card with a monthly payment of $55, for the HRS obligation for the big-screen television with a monthly payment of $40, and monthly payments of $282 on his Ford Explorer. The wife was awarded the personal items she requested. The husband was awarded the gas-fired generator, the big-screen television, the computer and computer table, one set of bedroom furniture, and various other items of personal property, as well as his Ford Explorer, subject to the indebtedness on it. In addition, the trial court, in its judgment, awarded the wife, one-half of the husband’s retirement plan through International and directed the husband to name the wife as the survivor beneficiary if such a designation was permitted by the plan.
The husband filed a timely post-judgment motion, challenging the provisions of the trial court’s judgment dealing with property division, the assignment of marital debts, and alimony. The husband further contended that the trial court had exceeded its authority under Alabama law in its award of retirement benefits to the wife. The trial court set a hearing for the postjudgment motion pursuant to the husband’s request. The husband failed to appear at the hearing, and the trial court denied the motion.
The husband timely appealed. On appeal, the husband raises the same issues he raised in his postjudgment motion. We will address his arguments in the order in which they are raised.
*634 In a divorce, matters such as alimony and property division are within the sound discretion of the trial court, and that court’s rulings on those matters will not be reversed absent a showing of plain and palpable error. Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ.App.1987); Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993). On appeal, because a division of marital property and an award of periodic alimony are interrelated, these issues must be considered together. Barnes v. Barnes, 521 So.2d 58 (Ala.Civ.App.1988); Montgomery, supra. The trial court’s rulings on those issues will not be reversed absent a finding that the rulings are not supported by the evidence and thus that they amount to an abuse of discretion. Parrish, supra. A division of property is not required to be equal, but it must be equitable, according to the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996); Parrish, supra. In dividing the marital property, the trial court should consider “the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party’s potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property.” Covington v. Covington, 675 So.2d 436, 438 (Ala.Civ.App.1996). Moreover, “funds paid into a retirement plan [by the husband] are an asset of the husband which may be considered by the court in effecting an equitable property division or an award of alimony in gross.” Powell v. Powell, 628 So.2d 832, 834 (Ala.Civ.App.1993) (citing Nelson v. Nelson, 628 So.2d 798 (Ala.Civ.App.1993)).
Initially, the husband contends that the provision of the trial court’s judgment pertaining to the property division was an abuse of discretion. We do not agree. This was a 32-year marriage. The husband lost two stable and well-paying jobs through his irresponsible behavior and his excessive gambling. There is no doubt that the husband’s compulsive gambling and the devastating effect it had on the husband’s career, along with the financial ruin it brought upon the family, was a factor contributing to the divorce. Further, this conduct caused the wife to invade her inheritance funds, which might have provided her with security in her later years. The wife, with only two years of college and sparse experience, lacks the earning potential the husband possesses with his financial degree and wealth of experience. The source of the down payment for the home was the wife’s father; the $38,000 that kept the husband from facing criminal charges was a significant portion of the wife’s inheritance. It appears fair and equitable, under such circumstances, to award the wife the bulk of the remaining marital estate. See Coving-ton, supra. We cannot say that the trial court abused its discretion in fashioning the property division in the divorce judgment.
The husband also challenges the provision of the trial court’s judgment awarding periodic alimony to the wife. Although the husband concedes that the wife is a qualified candidate for periodic alimony, he claims that the trial court erred in awarding too great an amount in light of the marital debts the husband is obligated to pay. The husband claims that, after paying all of the obligations the court directed him to pay, he will be left with a net monthly income of $1,057, for his personal expenses. The testimony indicates that only the husband’s name appears on the accounts for which he was ordered to be responsible and that he was the party who primarily used those accounts. We note that if he pays those accounts as they are *635 due and makes no further charges on them, all of the obligations, with the exception of the car payment, will be satisfied within three years. We cannot say that the trial court erred in making an award of periodic alimony to the wife in the monthly amount of $1,000.
The husband further argues that the trial court erred in its award of periodic alimony because it did not specify that the alimony obligation would cease upon the death or remarriage of the wife. “In Alabama, periodic alimony payments cease at the death of either spouse.” Kelley v. State Dep’t of Revenue, 796 So.2d 1114, 1118 (Ala.Civ.App.2000). Further, Alabama statutory law provides that divorce judgments including provisions for periodic alimony “shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex.” § 30-2-55, Ala.Code 1975. We conclude, therefore, that the term “periodic alimony,” by definition, means a payment to a spouse that will cease upon death, remarriage, or cohabitation.
Finally, the husband contends that the trial court erred by directing him to designate the wife as the beneficiary of his retirement plan, if the plan permitted such a designation. The division of retirement benefits in a marital estate is governed by § 30-2-51, Ala.Code 1975, which provides that a judge may include the present value of vested retirement benefits in the marital estate of either spouse in the event the following three conditions are met: (1) the parties were married for at least 10 years during which the benefits were accumulated; (2) no benefits acquired prior to the marriage are included; and (3) the total amount of the retirement benefits payable to the noncovered spouse do not exceed 50% of the retirement benefits that may be considered by this court. In its judgment, the trial court awarded the wife one-half of the husband’s retirement benefits. Because of the length of the marriage, this provision was within the parameters set forth by § 30-2-51.
However, the trial court went on to direct the husband to designate the wife as beneficiary of his retirement benefits after his death. This provision violates § 30-2-51, because it is not based on “present value” and it could potentially operate to award the noncovered spouse an amount in excess of 50% of the husband’s retirement benefits. Therefore, we reverse the provision of the trial court’s judgment directing the husband to designate the wife as beneficiary of his retirement benefits and remand the matter to the trial court with instructions to vacate that provision of the divorce judgment. The remainder of the trial court’s judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.

. Although all of the charges were not cash advances used for gambling, those types of charges and other charges directly related to gambling accounted for at least one-third of these unauthorized charges.

. The testimony was undisputed that the wife had inherited in excess of $100,000 from her father upon his death.