12 So.3d 693 (2008)
James B. KOVAKAS
v.
Rebecca L. KOVAKAS.
2050780 and 2606229.
Court of Civil Appeals of Alabama.
May 23, 2008.
Certiorari Quashed January 9, 2009 Alabama Supreme Court 1071242.
*695 Stephen W. Shaw of Redden, Mills & Clark, Birmingham, for appellant.
Douglas L. Key and Foster D. Key of Key Greer Frawley & Harrison, Birmingham, for appellee.

On Application for Rehearing
PITTMAN, Judge.
This court's opinion of February 1, 2008, is withdrawn, and the following is substituted therefor.
James B. Kovakas ("the husband") appeals from a judgment divorcing him from Rebecca L. Kovakas ("the wife") that, among other things, divided the parties' marital property and awarded primary physical custody of the parties' child to the wife (case no. 2050780). The husband also appeals from the denial of his Rule 60(b), Ala. R. Civ. P., motion (case no. 2060229).
The parties were married on November 16, 2002; their only child, a son, was born on July 9, 2004. The parties separated in August 2004, and three months later the husband filed a complaint seeking, among other things, a divorce from the wife, custody of the child, and an equitable division of the parties' assets and an allocation of the parties' debts. The following month, the wife filed an answer and a counterclaim requesting that the trial court award her, among other things, custody of the child and an equitable division of the marital assets. The wife also requested a hearing to determine the matters of child support and physical custody of the child *696 during the pendency of the divorce action; the trial court conducted a hearing and entered an order addressing those issues on February 22, 2005.
The trial court conducted an ore tenus proceeding and accepted testimony and documentary evidence as to the claims asserted in the parties' pleadings on October 17, 2005. The trial court rendered a judgment on December 16, 2005, that was entered into the electronic case-management system on January 9, 2006. In that judgment, although the parties were awarded joint legal custody of the child, the wife was awarded primary physical custody, the husband was awarded standard visitation, and the husband was instructed to pay $750 per month in child support. The divorce judgment awarded the wife the parties' only jointly owned parcel of property, a house situated on 19 acres located in Shelby County ("the farm"). After awarding one motor vehicle to the wife, the judgment awarded the husband the parties' remaining motor vehicles, as well as real property, residences, and a mobile-home park  most of which had been owned by the husband before the marriage. The judgment also ordered each party to be responsible for debts in his or her name and ordered the husband to pay the wife $22,853, part of which was intended to cover a portion of the wife's attorney fee.
The husband filed a postjudgment motion on February 7, 2006. Following a hearing on that motion, the trial court purported to amend the divorce judgment on May 9, 2006, to include additional visitation for the husband with the child until the child begins attending kindergarten; the trial court denied all the husband's other requests in his postjudgment motion. Although the trial court purported to add additional visitation for the husband with the child, that amended judgment was entered on the 91st day after the husband had filed his postjudgment motion; because the 90-day period for ruling on that motion was not validly extended, that purported amendment was void. See, e.g., Rule 59.1, Ala. R. Civ. P.; see also Nunnery v. Nunnery, 587 So.2d 1214, 1214 (Ala.Civ.App.1991).[1] The husband filed a timely notice of appeal on June 19, 2006,[2] and asserts that the trial court erred when it (1) awarded the wife primary physical custody of the parties' child despite awarding the parties joint legal custody of the child; (2) divided the marital property in a manner that, he claims, is inequitable; and (3) directed the husband to partially defray the wife's legal costs.
After the appeal was taken, the husband filed in the trial court a motion pursuant to Rule 60(b), Ala. R. Civ. P., in which he contended that the wife had lied during the divorce proceedings and that, therefore, the judgment could not stand. The husband has also appealed from the trial court's denial of that motion; the husband's appeals have been consolidated.
The trial court heard extensive testimony regarding the parties' lavish lifestyle during their short marriage. The evidence indicated that, approximately six months after the parties were married, the wife sold her home in New York for $472,000. The wife testified that she had divided that money into three accounts: the sum of $100,000 was deposited into a savings account in her name, an identical amount *697 was deposited into a savings account in the husband's name, and the remaining funds were deposited into the parties' joint checking account.
Before the marriage, the husband had worked as a flight attendant; during the marriage, he worked as a real-estate broker. Before the parties were married, the husband had purchased and operated a mobile-home park in Wilsonville. The parties disagreed as to the amount of income produced by that business property during the marriage; the husband estimated that, at the time of trial, he received around $250 per month from the mobile-home park, but the wife stated that he earned at least $850 per month.[3] The husband also owned two houses in Columbiana, one of which served as the marital residence for the parties.
At some point during the marriage, the parties jointly purchased the farm; the husband testified that the reason the parties had purchased the farm was because that property was located directly across from his parents' house. The farm was purchased for $339,000, with a down payment of $72,000 provided by the wife from her own funds. The remainder of the purchase price was financed with a mortgage loan. The house at the farm was in need of renovation, and the wife spent money from the parties' joint checking account to renovate the house. By the time of trial, the parties agreed that they had invested an additional sum of $300,000 into the property, but the renovation was incomplete. The husband testified that the parties had listed the farm for sale before trial for over $600,000, but the property did not sell at that price; the husband stated that he did not believe the farm would sell for a large enough sum for the parties to recoup their total investment.
The husband first asserts that the trial court erred in awarding the physical custody of the parties' child to the wife. He references the Supreme Court's decision to abolish the "tender-years presumption" (see Ex parte Devine, 398 So.2d 686 (Ala.1981)) and extrapolates from that decision a mandate that he should receive custody of the parties' child. We note that in a divorce case, when the evidence has been presented ore tenus, the judgment of the trial court will be presumed correct and will not be reversed unless it is unsupported by the evidence so as to be plainly and palpably wrong. See Somers v. McCoy, 777 So.2d 141, 142 (Ala.Civ.App. 2000), and Scholl v. Parsons, 655 So.2d 1060, 1062 (Ala.Civ.App.1995). In original divorce actions, the parties stand on an equal footing with no presumption of entitlement to custody inuring to either parent. See Ex parte Couch, 521 So.2d 987, 989 (Ala. 1988); see also Smith v. Smith, 727 So.2d 113, 114 (Ala.Civ.App.1998).
The primary concern in making an initial determination of child custody incident to a divorce action is the best interests of the child; to that end, the trial court is given discretion in awarding custody and establishing visitation, and its determination of such matters will not be reversed absent a clear showing that the trial court acted outside its discretion. See Somers and Scholl, supra. Several factors are to be considered by the trial court when making a custody determination, including the age and sex of the child; the child's emotional, social, moral, material, and educational needs; and the characteristics of those seeking custody, including their age, character, stability, mental and physical health, and their respective home *698 environments. Ex parte Devine, 398 So.2d at 696-97.
In this case, the evidence established the fact that the wife had been the primary caregiver for the parties' child. Although the husband argued that he had developed a visitation schedule that allowed each party to have physical custody of the child four days a week during alternating weeks, that schedule was not favored by the wife and was not adopted by the trial court. The bulk of the testimony at trial regarding custody centered on each party's belief that he or she would be the better custodial parent; each party also suggested reasons why the child's interests would be served by not awarding primary physical custody to the other party.[4] The husband tried to portray the wife as flighty, scatter-brained, and financially irresponsible. The wife testified that the husband was overly controlling and intolerant of little mistakes, especially those made by an energetic toddler. She stressed that his irregular work schedule and demanding temperament made him less capable of handling the daily problems that arise when raising a child. Because the trial court heard disputed testimony as to which party would be the better custodial parent for the child and determined, based upon an application of the Ex parte Devine factors, that the wife would make the better custodian, we cannot conclude that the trial court erred in awarding physical custody of the child to the wife.[5]
The husband also asserts that the trial court divided the parties' assets in a manner that, he claims, was inequitable. Dividing marital property and determining whether to award alimony are matters within the sound discretion of the trial court, and the judgment of the trial court is presumed correct when based upon evidence received in an ore tenus proceeding. Ex parte Durbin, 818 So.2d 404, 408 (Ala. 2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993). The law is well settled that "`"property divisions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court."'" Ex parte Drummond, 785 So.2d 358, 361 (Ala.2000) (quoting Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ. App.1996), quoting in turn Duckett v. Duckett, 669 So.2d 195, 197 (Ala.Civ.App. 1995)); see also Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996). When dividing marital property and determining the need for alimony, a trial court should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have become accustomed during the marriage; and any fault of the parties contributing to the breakup of the marriage. Golden, 681 So.2d at 608; see also Ex parte Elliott, 782 So.2d 308, 311-12 (Ala.2000). In examining whether the trial court acted within its discretion in dividing the parties' property, the proper question to be resolved is whether the property division was equitable under the facts of the case. See Golden, supra.
*699 The record establishes the fact that the parties lived together as a married couple for 21 months. During that time, the wife sold her separately owned home in New York for $472,000 and used proceeds from that sale to purchase the farm. The divorce judgment awarded the farm to the wife and made her solely responsible for paying the mortgage secured by that property.[6] Although the husband admitted that throughout the marriage the parties had lived in a house that he had purchased before the marriage, the judgment awarded that house, a second house, and the husband's mobile-home park to the husband.
The trial court had to determine how to split the marital assets and debts so that each party received a commensurate financial benefit; the wife had requested a substantial share of the marital assets based upon her financial contributions to the marriage. The husband was awarded all the real property he had owned before the marriage, including the home used by the parties as the marital residence, and all the parties' remaining properties apart from the farm, including the mobile-home park (which he operated as an income-generating business). However, the husband was ordered to pay the wife $22,853 as compensation for a portion of the wife's money that the trial court determined had been spent by the husband for his business and as partial compensation for the wife's attorney.[7]
The husband's primary contention is that the wife should not have received the farm without a requirement that he be paid for his share of the equity in that property. However, the husband admitted during the trial that all the money the parties had used to renovate the farm had been drawn from the parties' joint account, into which the wife had deposited over $250,000 of the proceeds from the sale of her home in New York. In addition, the husband admitted that he had not earned a large income during the marriage, that the wife's separate money had paid for the down payment on the farm and many of the renovations to the house located on the farm, and that, at the time of trial, the house on the farm still was uninhabitable and needed at least another $25,000 worth of work to make it habitable.
The husband noted that although he had earned between $18,000 and $50,000 as a real-estate broker during the three years preceding the trial, his mobile-home park had generated monthly income, after expenses, up to $1,500 for the family during that same period. He also opined that he should receive some payment for his "sweat equity," i.e., for services he had performed toward renovating the farm. However, the husband also testified that the parties had spent far more on purchasing and renovating the farm than they would be able to realize from selling it in its uninhabitable condition. The husband also stated his belief that in order to sell the farm in its uninhabitable condition, the parties would have to "take a loss" on the sale. Under that view of the evidence, the trial court was required to determine how *700 to apportion between the parties the "loss" that the husband expected the parties to suffer as a result of selling the farm.
A property division that appears to favor one party over another (as the husband contends exists here) does not necessarily indicate an abuse of discretion by the trial court. Dobbs v. Dobbs, 534 So.2d 621, 623 (Ala.Civ.App.1988); see also Fell v. Fell, 869 So.2d 486, 486-97 (Ala.Civ.App. 2003). Although the values of the husband's separately owned properties and his business property were disputed at trial, we conclude that the trial court could properly have determined from the evidence that the total value of the properties awarded to the husband was substantially equal to the net value of the farm, especially when considering that the parties would never recover their total investment in that property. Moreover, the husband and the wife agreed that the original down payment on the farm as well as a large portion of the money used to renovate the farm had been derived from the wife's proceeds obtained from selling her separately owned home a few months after the parties had married.
"The only limitation on a trial court's broad discretion in dividing the marital estate is that the property division and alimony award must be equitable under the circumstances of the particular case; the task of determining what is equitable falls to the trial court." Hall v. Hall, 895 So.2d 299, 303 (Ala.Civ.App.2004); see also Durbin, supra. In addition, this court is not allowed to reweigh the evidence or to substitute its judgment for that of the trial court. See Somers, supra; see also Tompkins v. Tompkins, 843 So.2d 759, 764 (Ala.Civ.App.2002). In light of the fact that the wife brought nearly half a million dollars into the marriage and the husband was awarded all other real estate and business assets of the marriage apart from the farm, we conclude that the wife was entitled to receive whatever amount the parties could realize from the sale of the farm.[8] Thus, we conclude that the trial court did not err in awarding the farm to the wife.
The judgment also ordered the husband to pay the wife $22,853, representing both compensation for a portion of the wife's money that, the trial court determined, had been spent by the husband for his business and an attorney-fee award. The husband contends that the trial court improperly ordered him to pay that amount. His sole argument in that regard is that the wife's present income and share of the marital estate is sufficient to enable her to pay her own legal and incidental expenses. It is well settled that the award of an attorney fee in a divorce action is a matter within the sound discretion of the trial court. See Slater v. Slater, 587 So.2d 376 (Ala.Civ.App.1991); Holmes v. Holmes, 487 So.2d 950 (Ala.Civ.App.1986). In determining whether to award an attorney fee in a divorce action, the trial court should consider, among other things, the conduct of the parties, the financial circumstances of the parties, and the outcome of the litigation. See McClelland v. McClelland, 841 So.2d 1264, 1272 (Ala.Civ. App.2002). Based upon the fact that the wife had obligated most of her separate assets to purchase and renovate the farm, and had obtained only part-time employment by the time of trial, whereas the husband had been awarded two houses and *701 an income-producing business property in addition to his realty business, we cannot conclude that the trial court abused its discretion in ordering the husband to assist the wife in paying certain outstanding legal costs and fees. A review of the relative financial positions of the parties indicates that the trial court could have properly determined that the husband should assist the wife with those specific expenses during the time that the farm, which constituted her sole principal asset after the divorce, was being marketed for sale.
The husband also asserts that the trial court erred in denying his Rule 60(b), Ala. R. Civ. P., motion; that motion was filed on September 9, 2006,[9] nearly nine months after the entry of the original divorce judgment, and about four months after the trial court had purportedly amended the divorce judgment on May 9, 2006, in response to the husband's Rule 59, Ala. R. Civ. P., motion. Assuming, without deciding, that the husband's Rule 60(b) motion was properly before the trial court despite the husband's failure to obtain leave from this court until after that motion was filed, we conclude that the trial court did not act beyond its discretion in denying that motion.
In his Rule 60(b) motion, the husband sought relief from the parties' divorce judgment based upon his allegations that the wife had possibly begun an intimate relationship with a married man during the pendency of the parties' divorce litigation. The husband contends that the wife should not have been awarded primary physical custody of the parties' minor child because, he says, the wife "hid" her alleged inappropriate behavior and thereby "lied" to the court; thus, he says, the wife obtained primary physical custody of the parties' child by way of fraud.
"`The only issue we consider on an appeal from the denial of a Rule 60(b) motion is whether, by denying the motion, the trial court abused its discretion.'" Ex parte Phillips, 900 So.2d 412, 418 (Ala. 2004) (quoting Wood v. Wade, 853 So.2d 909, 912 (Ala.2002)). Therefore, an appeal from the denial of a Rule 60(b) motion "`"does not present for review the correctness of the judgment that the movant seeks to set aside, but presents for review only the correctness of the order from which the appeal is taken."'" Phillips, 900 So.2d at 419 (quoting Wood v. Wade, 853 So.2d at 913, quoting in turn Satterfield v. Winston Indus., Inc., 553 So.2d 61, 63 (Ala.1989)). Thus, we must determine only whether the trial court acted outside the limits of its discretion in denying the husband's Rule 60(b) motion.
The allegations in the husband's Rule 60(b) motion are based on excerpts from a deposition of the wife taken in June 2006 regarding different activities that she undertook between January and October 2005 and a pair of depositions taken during April and May 2006 of one of the wife's male acquaintances, Samuel Louis Diamond, concerning his activities during the same period. In those depositions, taken in preparation for a hearing in Diamond's divorce action, the wife and Diamond admitted to attending parties and other events together intermittently in 2005, during which time Diamond was married to another woman. However, not one of the excerpts provided by the husband concerns any activity that occurred before the parties had separated in August 2004 or *702 before the husband had filed his complaint seeking a divorce from the wife.
Initially, we note that the husband does not state any reason why the deposition evidence he offers as "newly discovered evidence" in his Rule 60(b) motion could not have been presented to the trial court before September 2006. Moreover, acts of adultery do not bar an award of custody to the party who committed adultery; in order to deprive a parent of custody on the basis of that parent's adultery, there must be evidence that the adultery had a direct bearing upon the welfare of the child. J.H.F. v. P.S.F., 835 So.2d 1024, 1029 (Ala. Civ.App.2002). We conclude that even if the husband's Rule 60(b) motion had brought evidence of the wife's potential adultery to the trial court's attention in a timely manner, the trial court could properly have concluded that the motion failed to state any sufficient ground to set aside the parties' divorce judgment.
The husband also contends that the trial court improperly denied his Rule 60(b) motion without holding a hearing. We note that the husband did not request a hearing in the body of his motion or in a separate filing. The husband requested only that the trial court set aside the divorce judgment and set the case for a new trial. When a party fails to request a hearing, "to deny his motion without a hearing [is] not error." Maples v. Maples, 599 So.2d 625, 626 (Ala.Civ.App.1992); see also Kilpatrick v. Kilpatrick, 678 So.2d 1185, 1186 (Ala.Civ.App.1996). Even when a hearing is requested, a hearing need not be held if the motion for relief "clearly is without substance and [is] merely an attempt to burden the court with frivolous contentions." Waldron v. Fikes, 378 So.2d 1138, 1139 (Ala.Civ.App.1979); see also Bradford v. Bradford, 628 So.2d 732, 734 (Ala.Civ.App.1993). Given the nature of the allegations presented in the husband's Rule 60(b) motion, we can find no circumstances warranting relief in this case. We conclude, therefore, that the trial court could properly deny the husband's Rule 60(b) motion without a hearing.
Based upon the foregoing facts and authorities, the trial court's divorce judgment is due to be affirmed. The trial court's denial of the husband's Rule 60(b) motion is also due to be affirmed.
The wife's request for the award of an attorney fee on appeal is denied.
2050780  APPLICATION OVERRULED; OPINION OF FEBRUARY 1, 2008, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and THOMAS, J., concur.
MOORE, J., concurs in part and dissents in part, with writing.
BRYAN, J., concurs in the result in part and dissents in part, with writing.
2060229  APPLICATION OVERRULED; OPINION OF FEBRUARY 1, 2008, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
BRYAN, J., concurs in the result, with writing.
MOORE, Judge, concurring in part and dissenting in part in case no. 2050780 and concurring in case no. 2060229.
Although I concur with the main opinion's affirmance of the trial court's divorce judgment with regard to the division of the parties' property, the award of custody of the child to the wife, and the award of an attorney fee to the wife, and the main opinion's affirmance of the trial court's denial of the husband's Rule 60(b), Ala. R. *703 Civ. P., motion, I disagree with the main opinion's decision to uphold the provision in the divorce judgment automatically reducing the husband's visitation once the child starts kindergarten. See ___ So.3d at ___ n. 5.
The husband cites Hovater v. Hovater, 577 So.2d 461, 465 (Ala.Civ.App.1990), and Korn v. Korn, 867 So.2d 338 (Ala.Civ.App. 2003), in support of his argument that the trial court erred by including in the divorce judgment a provision that automatically reduces the husband's visitation once the child starts kindergarten. In Hovater, this court expressed its disapproval of automatic reversionary clauses with regard to custody. This court reasoned that custody determinations are based primarily on the best interests of the child and that it is reversible error for a trial court to order a change of custody based on the occurrence of a future contingency because that change would necessarily be "premised on a mere speculation of what the best interests of the children may be at a future date." 577 So.2d at 463. The court in Hovater noted that the law provides that the trial court may always enter a future judgment changing custody if a material change of circumstances occurs such that a change of custody would materially promote the best interests of the child and outweigh the traumatic effects of uprooting the child. 577 So.2d at 464. See also Korn, 867 So.2d at 345 (reversing judgment containing automatic custodial reversionary clause).
The main opinion states that the reversionary clauses in Hovater and Korn are distinguishable from the reversionary clause in the present case because the reversionary clause in the present case involves visitation, not custody. ___ So.3d at ___. I note, however, that this court has previously found the reasoning in Hovater and Korn to be equally applicable to automatic reversionary clauses concerning visitation. In Long v. Long, 781 So.2d 225 (Ala.Civ.App.2000), this court, citing Hovater, reversed a judgment containing a provision providing for an automatic modification of visitation after six months had passed. 781 So.2d at 227. This court noted that there was no evidence to indicate that, in six months, there would be a change of circumstances warranting a modification of visitation and that there was no basis to determine future events. Id.
Similarly, in the present case, there is no basis for determining future events. Further, there is no evidence to indicate that, when the child starts school, there will have been a change of circumstances that would warrant the specific modification of visitation set forth in the divorce judgment. If the visitation schedule set out in the divorce judgment turns out to be contrary to the child's best interests once the child starts school, one or both parents should recognize that fact and petition the trial court for a modification of the visitation schedule. However, if the parents discover that the child's best interests are served by continuing the same visitation schedule even after the child starts school, they, and the child, should have a right to maintain that schedule. The trial court should not make that decision for the parties at this time based on its speculation as to the effect of a future change of circumstances on the child.
The trial court's judgment with regard to the change in the husband's visitation schedule is "premised on a mere speculation of what the best interests of the child[] may be at a future date." Hovater, 577 So.2d at 463. Accordingly, that provision should have no effect. I, therefore, would reverse the trial court's divorce judgment insofar as it provides for an automatic *704 change of the husband's visitation schedule once the child starts school.
BRYAN, Judge, concurring in the result in part and dissenting in part in case no. 2050780 and concurring in the result in case no. 2060229.
I dissent insofar as this court affirms the divorce judgment providing an automatic reversionary clause regarding visitation. I join Judge Moore's special writing with respect to that issue. Otherwise, I concur in the result.
NOTES
[1] Neither party has raised an issue relating to the amended judgment.
[2] We note that June 19, 2006, was exactly 42 days from May 8, 2006, which was the date on which the husband's postjudgment motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P.
[3] Later, the husband testified that his mobile-home park had generated up to $1,500 per month for the family during the parties' marriage.
[4] It is important to note that neither party testified that the other party was unfit or would be an improper custodian for the child.
[5] Although the husband cites Korn v. Korn, 867 So.2d 338 (Ala.Civ.App.2003), and Hovater v. Hovater, 577 So.2d 461 (Ala.Civ.App. 1990), for the proposition that the trial court improperly included an automatic-reversion clause in its judgment that will reduce the husband's extended visitation to "standard" visitation after the child begins school, we note that those cases only address automatic custody-modification reversion clauses and are therefore distinguishable from this case.
[6] While the husband's postjudgment motion was pending, the wife requested a court order to allow her to accept a contract to sell the farm for $452,000 and to proceed to closing; the trial court granted that request upon the condition that the proceeds from the sale be maintained in her attorney's trust account pending resolution of the husband's postjudgment motion and a possible appeal.
[7] Alabama law is well settled that "alimony in gross" is compensation for a recipient spouse's inchoate marital rights; it may also represent a division of the fruits of the marriage when liquidation of a couple's jointly-owned assets is impracticable. Ex parte Hager, 293 Ala. 47, 54, 299 So.2d 743, 749 (1974).
[8] Although neither the trial court in its judgment nor the parties in their briefs mention "alimony in gross," the award of the farm and the other financial awards may be viewed as compensation for the wife's inchoate marital rights. Ex parte Hager, 293 Ala. 47, 54, 299 So.2d 743, 749 (1974).
[9] The husband obtained the necessary leave from this court to file that motion in the trial court on September 15, 2006, six days after filing the motion. See Rule 60(b), Ala. R. Civ. P.