THOMPSON, Presiding Judge.
Aliant Bank, a division of USAmeriBank (“Aliant”), appeals from a judgment of the St. Clair Circuit Court (“the trial court”) in favor of Shirley A Davis. Aliant filed this civil action against Davis seeking to obtain property that she had been awarded in a March 14, 2012, divorce judgment (“the divorce judgment”) that incorporated an agreement reached between Davis and her husband, Alfred Davis (“Alfred”).[1] In its complaint, Aliant alleged that the transfer of property from Alfred to Davis in the divorce judgment constituted a fraudulent transfer.
The record indicates the fpllowing. Davis and Alfred .married in 1955 arid had six children.[2] Davis and Alfred jointly owned Alfred Dayis, Inc., which did business as Comfort Air Company, Inc. (“Comfort Air”).[3] Although Davis was primarily a housewife who, reared the children, she did bookkeeping for Comfort Air. Alfred was also one of two owners of A & D Builders, LLC (“A & D”), a real-estate deyelopment company.
During the course of the marriage, Davis, who was 76 years old at the time of the trial of this matter, 'and Alfred, who was 78 years old at the time of the trial, lived in a home on a parcel of property *510 that had belonged to Davis’s family. Alfred testified that Davis inherited a> portion of that property and that Alfred and Davis had purchased her siblings’ interest in the property. The property contains a barn and a second house, which was built in the 1960s. Additionally, Davis and Alfred owned what the parties referred to as the “Henderson Road house” and a house in Pigeon Forge, Tennessee. They also acquired other assets during the marriage.
In June 2007, Aliant made a loan of $260,000 to A- & D. The loan was secured by a mortgage on a parcel of property consisting of 52 lots in a subdivision that A & D was developing. In addition to the mortgage, Alfred signed a personal guaranty of the loan. Davis did not sign the guaranty or the promissory note for the loan.
In December 2008, after 53 years of marriage, Alfred moved out of the marital residence and began living with his then girlfriend, Carol 'Jean (“Carol”), whom he later married. Davis ' testified ' that she was not "satisfied[1], with the property Alfred offered to'- her when he left her, and she and Alfred did not immediately divorce. Instead, they began protracted settlement negotiations. In the meantime, on March 25, 2011, Aliant filed an action against A & D and Alfred alleging that A & D had defaulted on the loan and owed Aliant bank $132,634.93.
On January 11, 2012, Alfred conveyed the marital residence and the surrounding 16 acres of property, which included the barn and the second house, what the parties call the marital compound (“the marital compound”), to Davis as part of a property settlement in anticipation of divorcing. About one week later, on January 17, 2012, Alfred filed a complaint seeking a divorce from Davis., The settlement agreement Alfred and Davis had reached had been reduced to writing, and a copy of the agreement was filed with the divorce- complaint. The settlement agreement was incorporated in the divorce judgment, which was entered on March 14, 2012.
Pursuant to the divorce judgment — and the agreement. between Davis and Alfred — Davis would receive the marital compound Alfred conveyed on January 11 as alimony in gross. The property composing the marital compound was valued at approximately $711,000. The judgment stated that Davis was responsible for the mortgage indebtedness on the marital compound, as well as payments for upkeep, insurance, utilities, and taxes. Davis received no periodic alimony; however, the issue of periodic alimony was reserved. Alfred was awarded the house in Tennessee, valued at approximately $125,000. In addition, Davis agreed to make no claim of interest in the house where Alfred and Carol were living. Alfred and Davis equally divided the investment accounts held in both their names, and each was awarded the entirety of any investment account held only in his or her name. Alfred testified that he had a certificate of deposit, worth $100,000. Alfred and Davis were each awarded the vehicle in his or her possession at the time the divorce judgment was entered. Alfred -also received a four-wheeler, a boat, two tractors, an all-terrain vehicle, a camper, and all items of personal property in his name or in his possession. Davis was awarded all items of personal property in her name or in her possession; Each was ordered to “pay and be solely responsible for any debts presently in his [or her] name, and ’... shall agree to indemnify and hold [the other] harmless for said debts.” Neither Alfred nor Davis appealed from, the divorce judgment.
Although the Henderson Road house was not mentioned in the divorce judg *511 ment, Davis testified that she told Alfred to sell the Henderson Road house so that he could use the proceeds to pay off the loan A & D had received from Aliant. Alfred testified that he sold the Henderson Road house and received approximately $100,000 from the sale, Alfred acknowledged that he received assets of approximately $420,000 in the divorce, which does not include the house where he and Carol were living at the time of the divorce. The divorce judgment also did not mention the lots remaining in the subdivision that A & D was attempting to develop and that was the subject of the mortgage securing the loan.
The same day the divorce judgment was entered, March 14, 2012, Aliant obtained a judgment in its action against A & D and Alfred in the amount of $132,634.93: On May 23, 2012, Aliant filed the current action against both Alfred and Davis, alleging that the award of property to Davis in the divorce action, made in accordance with the parties’ settlement agreement, constituted a fraudulent transfer of property. Specifically, Aliant alleged that the conveyance of the marital property to Davis was made with the intent to defraud Aliant. Aliant asked the trial court to set aside the transfer of property from Alfred to Davis. In support of its position, Aliant asserted, among other things, that Davis had paid only nominal consideration- for the property she received in the divorce settlement. It alleged that the transfer of the marital compound to Davis was made “without reasonably equivalent value.”
After a hearing at which the trial court heard ore tenus evidence, the trial court entered a judgment in favor of Davis. The trial court concluded that, among other things, there was no evidence to indicate that thé divorce, or the property settlement awarded to Davis in the divorce judgment, was fraudulent or collusive. Aliant appealed the judgment to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
Aliant contends that the trial court misapplied the law regarding fraudulent transfers in determining that the property award to Davis in the divorce judgment did not constitute a fraudulent transfer. Specifically, Aliant argues that the marital compound Alfred transferred to Davis as part of the settlement agreement and divorce judgment was fraudulent because, it says, Alfred did not receive “reasonably equivalent value” for the marital compound and he was not insolvent at the time of the transfer or made insolvent because of the transfer.
In its appellate brief, Aliant cites five reasons it believes that the trial court erred in determining that Alfred did receive “reasonably equivalent value” for the marital compound. Those reasons include the methods the trial court used for determining the value of the property. Aliant ' also takes exception with the trial court’s statement that the award of alimony in gross, i.e., the property award to Davis, “relieved [Alfred] of the obligation to pay periodic alimony.” Aliant contends that the trial court’s statement is incorrect and, thus, was- an improper' matter for consideration when determining “reasonably equivalent value,” because, Aliant says, the divorce judgment reserved the issue of periodic alimony.
In arguing that the trial court misapplied the law regarding fraudulent transfers, Aliant seeks to apply the Alabama Fraudulent Transfer Act (“the AFTA”), § 8-9A-1 et .seq., Ala.Code 1975, to a property division between divorcing spouses and asks this court to disregard the tremendous body of caselaw that actually governs awards of alimony and the division of marital property. Under most *512 circumstances, the AFTA is not applicable to divisions of marital property between divorcing spouses.[4]
In discussing the AFTA, this court has written:
“Two types of fraudulent transfers, actual and constructive, are within the scope of the -[AFTA]. See McPherson Oil Co. v. Massey, 643 So.2d 595 (Ala.1994). An actual fraudulent transfer is one made by a debtor who transfers assets ‘with actual intent to hinder, delay, or defraud any creditor of the debt- or.’ Ala.Code 1975, § 8-9A-4(a). The trial court considers several factors in determining whether the debtor possessed the requisite intent, including to whom the transfer was made, the amount of assets transferred, and the financial condition of the debtor before and after the transfer. Ala.Code 1975, § 8-9A-4(b); McPherson Oil, supra. A constructive fraudulent transfer occurs when a debtor transfers assets to another without consideration, and the debtor was, or became, insolvent at the time of the transfer. Ala.Code 1975, § 8-9A-5(a); McPherson Oil, supra.”
Varner v. Varner, 662 So.2d 273, 276 (Ala.Civ.App.1994).
The division of marital property is intended to give “each spouse the value of [his or her] interest in the marriage. Each spouse has a right, even a property right in this.” . Pattillo v. Pattillo, 414 So.2d 915, 917 (Ala.1982). See also Spuhl v. Spuhl, 120 So.3d 1071, 1075 (Aa.Civ.App.2013). Such property divisions are not transfers of assets made with the intention of “hindering], delaying], or defrauding]” creditors of a debtor spouse. § 8-9A-4(a), Aa.Code 1975.
As Aliant correctly notes, § 8-9A-5(a), Aa.Code 1975, a part of the AFTA, provides:
“A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer.”
(Emphasis added.) Aiant argues that Alfred’s conveyance of the marital compound was done for “nominal consideration,” which, it says, indicates that the conveyance was fraudulent. However, the conveyance of property between divorcing spouses pursuant to a property settlement does not involve monetary consideration; in other words, one spouse is not required to purchase the interest of the. other spouse in property divided pursuant to a property division. To require such consideration would defeat the purpose of a division of the marital assets. Furthermore, it is axiomatic that ;
“ ‘[a] division of marital property .in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. When dividing marital property, a trial court should consider several factors, including the length of the marriage; the age *513 and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage.’ ”
Yohey v. Yohey, 890 So.2d 160, 164-65 (Ala.Civ.App.2004) (quoting Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996)).
In its brief to this court, Aliant states that, “[a]s a matter of law, the trial court erred in considering the factors used to divide marital property as a basis for determining that [Alfred] received ‘reasonably equivalent value’ for his transfers to [Davis].” In making that assertion, Aliant relies on In re Hinsley, 201 F.3d 638, 643 (5th Cir.2000), in which the United States Court of Appeals for the Fifth Circuit, applying Texas law, held that “[i]ntangible, non-economic benefits ... do not constitute reasonably equivalent value.” Hins-ley is easily distinguishable from the instant case because it involved partition agreements of a “community estate” between a debtor husband and a nondebtor wife who were not divorced. Id. at 640. The trustee overseeing the husband’s bankruptcy estate sought to have the wife’s portion of the estate restored to the “community estate.” Id. Hinsley is simply inapposite to the instant case.
Aliant cites no authority, and our research revealed none, in which an Alabama court has determined that a division of marital property pursuant to a divorce judgment constituted a fraudulent transfer of that property. In this case, Davis and Alfred had been married for 53 years before Alfred moved out of the residence to begin living with his girlfriend and had been married for 55 years at the time the divorce judgment was entered. .At the time Alfred moved out of the marital residence, A & D had not defaulted on the loan at issue, and, as the trial court pointed out, Davis and Alfred separated about two years before Aliant filed its action against Alfred and A & D and about three and one-half years before, it filed this action. Based on the record before -us, we conclude that substantial evidence supports the trial court’s finding that Alfred conveyed the marital compound to Davis without an actual intent to hinder, delay, or defraud Aliant. See § 8-9A-4(a).
For the reasons set forth above, we conclude that the AFTA has no application as to the division of the marital property in this case. Because each of Aliant’s issues on appeal involve application of the AFTA, we will not address those issues further.
■ Aliant has failed to demonstrate that the trial court erred in entering a judgment in favor of Davis. Accordingly, the judgment is due to be affirmed.
AFFIRMED.
PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, with writing, which THOMAS, J., joins.

.Aliant had initially also named Alfred as a defendant in the civil action and later added Alfred's current wife, Carol; as 'a defendant. However, before the .trial, Aliant dismissed its claims against Alfred and Carol. We note that approximately one year after this action was filed in May 2012, Alfred received a discharge in bankruptcy.

. The trial transcript indicates that Alfred testified that he and Davis had six children; the trial court's judgment states that they had five children.

. Comfort Air was no longer “a working cor- ' poration” at the time of the events made the basis of this action.

. For example, the AFTA has been applied in divorce actions when one spouse has con- • veyed property to a third party in an effort to defeat the other spouse’s marital right. See, e.g., Baggett v. Baggett, 870 So.2d 735, 739-40 (Ala.Civ.App.2003)(affirming trial court’s determination that the husband fraudulently transferred assets to a third party to reduce or eliminate his periodic-alimony obligation to the wife); Holley v. Holley, 660 So.2d 608, 610 (Ala.Civ.App.1995) (affirming trial court’s determination that the husband's transfer of ownership of a life-insurance policy to a third party was done to avoid obligation the husband owed to his former wife).