PER CURIAM.
Theresa V. Moore (“the wife”) appeals from a judgment divorcing her and John P. Moore, Jr. (“the husband”). The wife makes three arguments on appeal: (1) that the property division was inequitable; (2) that the alimony award was insufficient; and (3) that the trial court abused its discretion by failing to award her an attorney fee.
The parties were married for almost 20 years. The wife sought a divorce on the ground of adultery, alleging that the husband had been unfaithful to her over a period of 12 years with 6 or 8 different women. The husband admitted his infidelity, and he testified that for a number of *1156 years he had neither loved nor trusted his wife. The husband counterclaimed for a divorce on the ground that the parties were incompatible.
The trial court awarded the wife temporary custody of the parties’ children. On September 5, 2000, the trial court ordered that the husband pay the wife $2,500 per month in temporary child and spousal support. On October 5, 2001, the trial court granted the divorce on grounds of incompatibility, awarded custody of the children to the husband, and fashioned a property division and an alimony award.
Two sons were born of the marriage; they were, at the time of trial, 16 and 18 years old. The trial court awarded custody of the children to the husband, pursuant to the sons’ stated preference and the parties’ agreement. The wife was not ordered to pay child support.
When the parties married, the husband was a student in medical school at the University of South Alabama, and the wife was in training to become a nurse anesthetist. They lived in Mobile for two years, until the husband finished his residency, and they then moved to Dothan, where the husband established a surgical practice with another physician. At the time of trial, the husband was 47 years old. For the past 10 years, his annual income has exceeded $600,000.
At the time of trial, the wife was 46 years old. Although she had worked full-time as a nurse anesthetist while the parties lived in Mobile, once they moved to Dothan she worked part-time and then only sporadically. When she worked full-time, the wife had earned $20,000 to $30,000 per year; when she worked part-time, her earnings were $12,000 to $15,000 per year. For the five years before she filed for divorce she had not been employed outside the home at all. The evidence established that, in order to be re-certified as a nurse anesthetist, the wife would have to file an application and earn approximately 40 continuing-education credits. The wife testified that she did not intend to work at all after the divorce. In later testimony, she indicated that she might go into business for herself, buying and selling antiques.
The wife testified that her health was “fair.” She claimed to be suffering from glaucoma and a bulging lumbar disc. However, she presented no medical evidence to substantiate those claims. The wife testified that her eye doctor had advised her that she was subject to “possible blindness, later in life.” She testified that she had not asked the doctor whether her ailment was serious enough to prevent her from working. The wife said that a radiologist had diagnosed her disc problem. She said that she had trouble bending and lifting, but she admitted that she had not sought any treatment for her back pain. On cross-examination, the wife acknowledged that she had taken several recent ski trips and that she had won a competitive ski-racing award. She testified that skiing helped her back problems.
The parties had accumulated substantial assets during the marriage. They owned five parcels of real property: the marital home in Dothan, appraised at $960,000; two other residences in Dothan — one at 403 Dunleith Boulevard, valued at $200,000 and the other at 201 Dunleith Boulevard, valued at between $135,000 and $175,000; a condominium at Bay Point, Panama City Beach, Florida, valued at $300,000; and farmland in Coffee County valued at $375,000. The wife’s mother lives in the residence at 201 Dunleith Boulevard. In lieu of a house payment, the wife’s mother has contributed $600 per month to a fund established for the parties’ sons’ educations.
*1157 The parties owned four automobiles: a 2000 GMC Tahoe sport-utility vehicle valued at $34,000, on which the parties owe $30,000; a 1996 Chevrolet Impala valued at $15,000; a 1999 Chevrolet Silverado pickup truck valued at $15,000; and a 1996 Ford Bronco sport-utility vehicle valued at $7,500. They owned a 1995 Robalo boat worth $10,000 to $15,000 and a SeaDoo brand personal watercraft worth $8,000 to $9,000. In addition, they owned a farm tractor, a travel trailer, and a four-wheel recreational vehicle; the total value of those vehicles is approximately $25,000. The husband’s pension plan and profit-sharing account was valued between $900,000 and $1 million. The husband has a one-third interest in his medical practice, which he claims is worth $50,000.[1] He presented no evidence to substantiate that claim, but the wife presented no evidence in opposition. The husband has an educational account for the sons with Fidelity Growth and Income Fund; that account was valued at the time of trial at $90,000 to $100,000.
The parties disagreed as to the value of some of their property, specifically the contents and furnishings of the marital home and the wife’s jewelry. The husband valued the furniture and furnishings of the marital home at $300,000 to $500,000. The wife valued that property at $45,000. The trial court’s judgment states that it was “unable from the evidence to make any finding of a realistic value of this property.” The wife testified, without contradiction, that the contents of the Bay Point condominium were worth $25,000 to $50,000. The husband valued the wife’s jewelry at more than $45,000; the wife valued it at $20,000.
The parties incurred substantial debt, primarily as a result of their or the husband’s investment in a Coffee County real-estate development company managed by the husband’s brother. The husband owns a two-thirds interest in the company, Moore Development, LLC, and he is personally liable on the company’s debt, which amounts to $3,200,000. Part of the debt is secured by a mortgage on the marital home in the amount of $879,500. The husband is also liable for the mortgage debts on two other residences in Dothan: a $195,200 mortgage on the property at 403 Dunleith Boulevard and a $99,800 mortgage on the property at 201 Dunleith Boulevard. The debt service on all three mortgages is over $23,000 per month.
The trial court awarded the wife periodic alimony of $4,000 per month for 12 months, beginning on October 1, 2001, or until the wife was employed in her profession as a nurse anesthetist. The wife was awarded the beach condominium and its contents, the Robalo boat, the personal watercraft, and the 2000 GMC Tahoe. She was awarded her jewelry and the furnishings of four rooms in the marital home— the kitchen, the living room, the master bedroom, and the front foyer. The wife was also given the use of the residence at 403 Dunleith Boulevard until she remarried or cohabited with a member of the opposite sex, in which event the property would be sold and the net proceeds divided equally between the parties. The husband was ordered to pay the indebtedness on the property at 403 Dunleith Boulevard. The wife was also awarded the house in which her mother was residing at 201 Dun-leith Boulevard. The wife was ordered to pay the mortgage indebtedness on that property. The trial court’s judgment pro *1158 vides that if the wife is ever in default on the mortgage payment for more than 60 days, the title to that property shall immediately vest in the husband.
In the original judgment, the wife was given 25% of the husband’s pension and profit-sharing account. After a hearing on the husband’s postjudgment motion, however, the trial court reduced the wife’s share to 23%.
The husband was awarded the marital home and those contents not specifically awarded to the wife. He was ordered to pay the indebtedness on that home. He was also awarded the Coffee County farmland, the farm implements, the travel trailer, and the recreational vehicle, as well as all automobiles not awarded to the wife. He was awarded the children’s educational fund, his interest in Moore Development, LLC, as well as its indebtedness, and his interest in his medical practice. He was awarded 75% of his pension and profit-sharing plan. The husband was ordered to be solely responsible for all debts that arose during the marriage, before the wife filed for divorce. Each party was ordered to be responsible for debts he or she incurred after the wife filed for divorce. Each party was ordered to pay his or her own attorney fee.
The husband filed a postjudgment motion contending, among other things, that, before the date set for the husband to take possession of the marital home from the wife (who had occupied the house pending trial), the wife had vandalized the house and had stolen from it all the contents awarded to him. At a hearing on the husband’s motion, the husband presented testimony and documentary evidence in the form of a videotape, indicating that the marital home had been stripped bare of its furniture, furnishings, and some fixtures— including carpeting and wall murals and chandeliers, sconces, and other light fixtures. In addition, the husband testified that the house had been vandalized. The husband testified that the damage consisted of broken doors, ripped moldings, gouged plasterboard, and locks that had been “superglued.” The husband alleged that the wife had removed $192,450 worth of furniture and furnishings from the marital home and had caused $76,000 of damage to the house. After the hearing, the trial court entered an amended judgment reducing the wife’s share of the husband’s pension and profit-sharing account to 23%. Using a figure of $950,000 for the value of that account, the wife’s share equals $218,500.
I. Property Division and Alimony Award
The wife argues that the trial court erred in its property division and in awarding her periodic alimony for only one year. The issues of property division and the award of alimony are interrelated, and those issues must be considered together. Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App.1998); Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1995). Therefore, we address the wife’s arguments pertaining to those issues together.
“It is well settled that trial judges enjoy broad discretion in fashioning divorce judgments.” Ex parte Bland, 796 So.2d 340, 343 (Ala.2000). Where the trial court has received ore tenus evidence, its judgment based on that evidence is presumed to be correct and will not be reversed absent plain and palpable error. Nichols v. Nichols, 824 So.2d 797 (Ala.Civ.App.2001). That presumption of correctness is based in part on the trial court’s unique ability to observe the demeanor of the witnesses and assess their credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986). The issues of property division and alimony are within the trial court’s discretion. *1159 Turner v. Turner, 804 So.2d 1118 (Ala.Civ.App.2001).
At the beginning of the hearing on the husband’s postjudgment motion, the trial court explained the reasoning behind its property-division and alimony awards as follows:
“THE COURT: Because of the acrimony between the parties, the Court felt that periodic alimony would not be appropriate because the parties have been unable to communicate with one another.... The Court, in its decision, found that Dr. Moore’s net worth was between $1.6 and $2 million. Therefore, the Court awarded Mrs. Moore what [it] felt was an appropriate separate estate in ivhich she could move on. The Court awarded a [condominium], which ... was valued at $315,000, free and clear. The Court awarded 25 percent of the retirement account, which the Court calculated to be approximately $250,000. The Court awarded the use of a $200,000 home. With past support being paid up to the time of the divorce, which was a year ... And [periodic] alimony ..., the Court awarded $96,000 in total sums.
“The Court awarded $30,000 for the [sport-utility vehicle]. And the Court awarded Mrs. Moore furnishings and jewelry in the approximate amount of $100,000. For a total of $976,000, approximately.
“The Court also took into consideration the fact that Dr. Moore would be supporting the children in the future, and that Dr. Moore assumed all debts of the parties.
“That was the basis for the Court’s decision.”
(Emphasis added.)
Thus, the trial court concluded that its property division and alimony award provided the wife “an appropriate separate estate in which she could move on.” However, the appropriate standard for determining a property division and alimony award provides:
“An equitable, rather than an equal, division of marital assets is required. [Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993)]. The factors the trial court should consider in fashioning its property division [and alimony award] include ‘the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party’s potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property.’ Covington v. Covington, 675 So.2d 436, 438 (Ala.Civ.App.1996).”
Myrick v. Myrick, 714 So.2d at 313.
The wife claims that the trial court’s property division and alimony award are not equitable and that the trial court erred in including some values in its determination of the total of its award to the wife. In explaining the manner in which it fashioned the property division and award of alimony, the trial court stated it had included the entire $200,000 value of a house it did not award to the wife; rather, it awarded the wife the use of that house for so long as she remains single or does not cohabitate with a member of the opposite sex.
The trial court also included as an asset awarded to the wife $96,000 in periodic alimony payments; that amount represented the alimony the wife was to receive for one year plus the amount she had already received during the parties’ separation. Periodic alimony is in the nature of support for a dependent spouse. See Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974); O’Neal v. O’Neal, 678 So.2d 161 (Ala.Civ.App.1996). Alimony in gross is in the nature of a property settlement. Hager v. Hager, supra. Although the is *1160 sues of alimony and property division are to be considered together, under the facts of this case, the trial court erred in including in its calculation of the assets awarded to the wife the value of the periodic alimony designed for her support. The value of the assets the trial court awarded the wife are greatly diminished when the value of the periodic alimony and the value of the house that which the wife was awarded the use of are subtracted from the award.
It does not appear that either party was free of fault; however, the husband admitted to having numerous affairs during the course of the parties’ marriage. Given the factors relevant to an equitable property division and alimony award, especially the disparity in the parties’ earning capacities and prospects and the length of the parties’ marriage, we must conclude that the trial court’s alimony award and its division of the marital estate, accumulated over the course of the parties’ 20-year marriage, was inequitable. See Myrick v. Myrick, supra.
II. Attorney Fee
The wife argues that the trial court abused its discretion by failing to award her an attorney fee. It is well settled that the award of an attorney fee in a divorce action is a matter within the sound discretion of the trial court. See Slater v. Slater, 587 So.2d 376 (Ala.Civ.App.1991); Holmes v. Holmes, 487 So.2d 950 (Ala.Civ.App.1986). In determining whether to award an attorney fee, the trial court should consider the conduct of the parties, the financial circumstances of the parties, and the outcome of the litigation. Murphree v. Murphree, 579 So.2d 634, 637 (Ala.Civ.App.1991).
On the issue of conduct, the trial court apparently found that the wife was responsible for the damage to the marital home. The trial court reduced the wife’s share of the husband’s pension plan as a result of that conduct. In addition, the husband presented evidence indicating that during the year the case was awaiting trial, the wife forged two checks totaling $5,000 on the husband’s personal checking account and improperly accessed a credit-card account belonging to the husband, resulting in charges of $13,000 for, among other things, the wife’s airline tickets and expenses while she vacationed in Dallas, Denver, Palm Springs, Las Vegas, Toronto, and New York City.
The trial .court could have concluded that the husband had already, in effect, “paid” the wife’s attorney fee, based on the following facts: The wife made a claim on the parties’ homeowners’ insurance for damage to an antique bathtub; the insurance company sent the wife a check in payment of the claim; the wife elected not to repair or replace the bathtub but instead used the check to pay her attorney; and the bathtub is a fixture in the marital home, which was awarded to the husband. We conclude that the trial court did not abuse its discretion in declining to award the wife an attorney fee.
The wife’s request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and PITTMAN and MURDOCK, JJ., concur.
CRAWLEY, J., concurs as to Part II and dissents as to Part I.
THOMPSON, J., concurs as to Part I and dissents as to Part II.

. The record does not reflect when a third doctor entered the practice or identify the third partner.