In 2001, after 19 years of marriage, John P. Moore, Jr. ("the husband"), and *Page 1162 
Theresa V. Moore ("the wife") were divorced by the Houston Circuit Court, following the presentation of ore tenus evidence. The trial court divided the marital property and the debts of the marriage and awarded the wife $ 4,000 in monthly periodic alimony, "until such time as the [wife] has become employed in her profession as a nurse anesthetist, but for no longer than twelve months from the date of [the] judgment."
The wife appealed, arguing that the property division was inequitable, that the alimony award was insufficient, and that the trial court had exceeded its discretion by failing to award her an attorney fee. The Court of Civil Appeals reversed the trial court's judgment as to the award of periodic alimony and the division of the marital estate, stating its "conclu[sion] that the trial court's alimony award and its division of the marital estate, accumulated over the course of the . . . marriage, was inequitable." Moore v. Moore, [Ms. 2010349, October 25, 2002] 873 So.2d 1154, 1160 (Ala.Civ.App. 2002). The Court of Civil Appeals affirmed the trial court's judgment insofar as the judgment failed to award the wife an attorney fee, "conclud[ing] that the trial court did not abuse its discretion in declining to award the wife an attorney fee."Id. at 1160.
The husband petitioned this Court for certiorari review of the decision of the Court of Civil Appeals insofar as that decision reversed portions of the trial court's judgment. We find that the trial court's award of periodic alimony and its property division were not plainly or palpably wrong. Therefore, we reverse the judgment of the Court of Civil Appeals insofar as it reversed portions of the trial court's judgment.
 I. Facts
Following the presentation of ore tenus evidence, the trial court, in its final judgment of divorce, stated the following findings of fact:
 "1. The parties were married on March 5, 1982, and lived together in a marital state until on or about June 24, 2000, at which time they separated. In her complaint the [wife] charged the [husband] with committing adultery during the marriage with several women and seeks the divorce on the grounds of adultery. The [husband] admitted his infidelity and testified that his relationship with the [wife] had been less than satisfactory for years. The [wife] admitted that she had considered filing for divorce before she became aware of the [husband's] misconduct. The [husband] seeks a divorce in his counterclaim due to the incompatibility of the parties. . . .
 "2. There have been two children born of the marriage, [J.M.,] nineteen years of age, and [W.M.,] fifteen years of age. Shortly after the parties separated, both children chose to live with [the husband]. . . .
 "3. The [husband] is employed as a general surgeon in Dothan, Alabama, and has earned $500,000 to $600,000 a year for the last several years. His earnings for 2000 were approximately $100,000 less than in previous years.
 "4. The [wife] is a trained registered nurse anesthetist and she would require some additional training to obtain her certification. She worked very little during the marriage and not at all for the past three or four years. She has chosen not to work and there was evidence submitted that she does not intend to work; but intends to go into the antique business. During the time the parties have been separated, the [wife] has traveled extensively throughout the United States and Canada, apparently for her sole pleasure and recreation. It *Page 1163 
was unclear how she financed these trips.
 "5. The parties have accumulated substantial assets during the marriage, consisting of both real and personal property. They have also incurred considerable debt, which primarily is the result of a large real estate development in Coffee County, Alabama, Moore Development Company, a limited liability company. The [husband] owns a two-thirds interest in this company. His brother, a building contractor, owns the other third and is responsible for the day-to-day construction and maintenance of this development. However, the [husband] is 100% liable for all the debts of the company and has personally guaranteed payment of these debts to the lending institutions. The present indebtedness of the company includes approximately $3,200,000 owed to banks. Part of this debt is secured by a mortgage on the former marital home at 100 Asphodel Drive in Dothan, Alabama. The present balance on this debt is $879,500. The [husband] is also liable for mortgage debts on two other homes, one at 403 Dunleith Boulevard in Dothan and one at 201 Dunleith Boulevard in Dothan. There is $195,200 owed on the home at 403 Dunleith and $99,800 owed on the one at 201 Dunleith. To service these debts, the [husband] pays an average in excess of $23,000 [a] month. Although the [husband] enjoys a substantial income, this obligation, together with the reasonable monthly living expenses for the [husband] and the children, has exceeded his income for the past year, and there is no evidence that indicates his financial condition will improve. To the contrary it could very likely become worse. In addition to the mortgage indebtedness owed by the development company, it pays certain operating expenses and ongoing development costs. There are two accounts totaling $150,000 that are due on or before September 30, 2001. Prior to the organization of the development company, the parties were virtually debt free. However, they mutually agreed to enter into this venture and to go into substantial debt to do so. In fact the [wife] urged and encouraged the [husband] to make the investment and signed the mortgages to secure the loans.
 "6. The parties own several motor vehicles, a boat, wave runner, travel trailer and a four wheel recreational vehicle known as a `mule.' Included among the vehicles is a 2000 Chevrolet Tahoe on which is owed about $30,000. The parties estimate its worth between $32,000 and $34,000. It is unsure who has possession of the boat or where it is located. Both parties disclaim any knowledge regarding its whereabouts.
 "7. The parties own a condominium at Bay Point, Panama City Beach, Florida, which they value at $300,000 and its furnishings between $25,000 and $50,000. Nothing is owed on this property. They also own farmland in Coffee County, Alabama, with an agreed value of $375,000. This property likewise has no debt. There is a tractor and other farming equipment and implements on this land valued between $15,000 and $30,000.
 "8. The parties hold a mortgage on the home of the [husband's] mother in New Brockton, Alabama to secure an indebtedness of $50,000.
 "9. The [wife's] mother occupies the home at 201 Dunleith Boulevard and has contributed $600 a month to an education fund for the parties' sons for the last seven or eight years. She ceased making this contribution when the parties separated. The [wife] contends that *Page 1164 
this home was a gift to her mother and the [husband] denies this. The parties value the home between $135,000 and $175,000.
 "10. The [husband] has a one-third interest in his medical practice, which the [wife] claims is worth $50,000. There is no evidence to support this claim.
 "11. The educational fund of the two sons is invested in Fidelity Growth Income Fund and is worth between $90,000 and $100,000. This fund is under the control of the [husband].
 "12. The [husband] has a Pension Plan and Profit Sharing Plan through his employment with TD Waterhouse Securities. The actual value of these two plans is disputed. The [wife] contends that the Profit Sharing Plan is worth $399,829 and the [husband] claims it is worth $506,223. The Pension Plan is valued by [the wife] at $572,425 and the [husband] values it at $351,823. It may well be that the value assigned to each by the [wife] is reversed, i.e., the value for the Profit Sharing is actually that of the Pension Plan and vice versa. In either case the total of both would be the same.[1]
 "14. [The wife] values her jewelry at less than $20,000 while the [husband] values it in excess of $45,000.
"15. . . . .
 "16. The major differences in the respective values assigned by the parties to their assets are found in those given to the value of the development company and the furniture and furnishings in the former marital home at 100 Asphodel Drive. It appears from the [wife's] evidence that she determined the [husband's] two-thirds interest in the development company has a present value of $5,372,730. The Court finds that there is no evidence to support this claim. The Court does find that the [husband's] interest in this company will most likely be worth less than the current debt and will become even less valuable as time passes and interest and other costs and expenses are paid. The sale of lots in this development have apparently generated only enough funds to cover the monthly maintenance costs of the project.
 "17. The [husband] values the furniture and furnishings at 100 Asphodel between $300,000 and $500,000. The [wife] values this property at only $45,000. The Court is unable from the evidence to make any finding of a realistic value of this property.
 "18. The [husband] has been the sole means of support for the two sons, both before and after the separation, and he is able to continue to provide adequate support for them. . . ."
After making its findings of fact, the trial court made its award of periodic alimony and property division, which the Court of Civil Appeals accurately summarized:
 "The trial court awarded the wife periodic alimony of $4,000 per month for 12 months, beginning on October 1, 2001, or until the wife was employed in her profession as a nurse anesthetist. The wife was awarded the beach condominium and its contents, the Robalo boat, the personal watercraft, and the 2000 [Chevrolet] Tahoe. She was awarded her jewelry and the furnishings of four rooms in the marital home — the kitchen, the living room, the master bedroom, and the front foyer. The wife was also given the use of the residence at 403 Dunleith Boulevard until she remarried or cohabited with a member of the opposite sex, in which event the property *Page 1165 
would be sold and the net proceeds divided equally between the parties. The husband was ordered to pay the indebtedness on the property at 403 Dunleith Boulevard. The wife was also awarded the house in which her mother was residing at 201 Dunleith Boulevard. The wife was ordered to pay the mortgage indebtedness on that property. The trial court's judgment provides that if the wife is ever in default on the mortgage payment for more than 60 days, the title to that property shall immediately vest in the husband.
 "In the original judgment, the wife was given 25% of the husband's pension and profit-sharing account. After a hearing on the husband's postjudgment motion, however, the trial court reduced the wife's share to 23%.
 "The husband was awarded the marital home and those contents not specifically awarded to the wife. He was ordered to pay the indebtedness on that home. He was also awarded the Coffee County farmland, the farm implements, the travel trailer, and the recreational vehicle, as well as all automobiles not awarded to the wife. He was awarded the children's educational fund, his interest in Moore Development, LLC, as well as its indebtedness, and his interest in his medical practice. He was [ultimately] awarded 7[7]% of his pension and profit-sharing plan. The husband was ordered to be solely responsible for all debts that arose during the marriage, before the wife filed for divorce. Each party was ordered to be responsible for debts he or she incurred after the wife filed for divorce. Each party was ordered to pay his or her own attorney fee."
Moore v. Moore, 873 So.2d at 1158.
The monthly mortgage payment on the residence at 403 Dunleith Boulevard is $1,250.
 II. Standard of Review
This Court recently stated the standard of review an appellate court must apply in reviewing a judgment awarding alimony and dividing property:
 "'"A trial court's determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App. 1993). Moreover, issues of alimony and property division must be considered together, and the trial court's judgment will not be disturbed absent a finding that it is unsupported by the evidence so as to amount to an abuse of discretion. Id."
 "'Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ.App. 1996). . . .
 "'"The trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties' property. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala.Civ.App. 1989). Its judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence . . . as to be unjust and palpably wrong. Grimsley, 545 So.2d at 76. However, that judgment is subject to review and revision. Moody v. Moody, 641 So.2d 818, 820 (Ala.Civ.App. 1994). This Court must consider the issues of property division and alimony together when reviewing the decision of the trial court, Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App. 1996), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623 (Ala.Civ.App. 1993)." *Page 1166 
 "'Bushnell v. Bushnell, 713 So.2d 962, 964-65
(Ala.Civ.App. 1997).'"
Ex parte Foley, [Ms. 1020114, April 11, 2003] 864 So.2d 1094, 1097 (Ala. 2003) (quoting Ex parte Drummond, 785 So.2d 358, 360-61 (Ala. 2000)).
 III. Analysis "'"'[P]roperty divisions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court.'"' Ex parte Durbin, 818 So.2d 404, 408
(Ala. 2001) (quoting Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ.App. 1996), quoting in turn Duckett v. Duckett, 669 So.2d 195, 197 (Ala.Civ.App. 1995)).
 "'When dividing marital property, a trial court should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage.'
"Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App. 1996).
 "The Court of Civil Appeals has previously stated the purpose of a periodic-alimony award:
 "'The purpose of periodic alimony is to support the former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties enjoyed during the marriage, until the spouse is self-supporting or maintaining a status similar to the one enjoyed during the marriage.'
 "O'Neal v. O'Neal, 678 So.2d 161, 165 (Ala.Civ.App. 1996). However, as stated above, such an award is within the trial court's discretion."
Ex parte Foley, 864 So.2d at 1097-98.
The Court of Civil Appeals did not find that the trial court had exceeded its discretion. Instead, the Court of Civil Appeals "conclude[d] that the trial court's alimony award and its division of the marital estate . . . was inequitable." Moore v. Moore, 873 So.2d at 1160. However, as stated above, the determination of what is equitable rests within the broad discretion of the trial court. "It is not for an appellate court to substitute its judgment for that of the trial court."Ex parte Durbin, 818 So.2d 404, 409 (Ala. 2001). The trial court's findings of fact clearly reflect its consideration of all relevant factors, and it appears that the Court of Civil Appeals substituted its judgment for that of the trial court. "We must remember that '[w]e are authorized to disturb the trial court's decision only if it is unsupported by the evidence and, therefore, is unjust and palpably wrong.'" Id. (quoting Grimsley v. Grimsley, 545 So.2d 75, 76
(Ala.Civ.App. 1989)).
Judge Crawley dissented from the Court of Civil Appeals' holding that the trial court's property-division and periodic-alimony awards were inequitable, and wrote:
 "The wife received a substantial marital-property award. Although the monthly periodic-alimony payments of $4,000 from the husband were to end in 12 months, the trial court compensated for the lack of a monthly payment by awarding the wife the use of a $200,000 house on which the husband was ordered to pay the indebtedness and by ordering the husband to make the payments on the wife's $30,000 vehicle. The majority's reversal of the property-division and periodic-alimony awards constitutes, in my opinion, a substitution *Page 1167 
of this court's judgment for that of the trial court."
Moore v. Moore, 873 So.2d at 1161 (Crawley, J., concurring in part and dissenting in part). We agree with Judge Crawley. Also, we note that the wife was relieved of responsibility for substantial marital debts. Indeed, her continuing responsibility was limited to the mortgage indebtedness on a residence occupied by her mother, who had proven her ability to pay at least $600 per month for the privilege of living there.
We conclude that the trial court did not exceed the limits of its discretion in its award of alimony or its division of the marital property. Based upon our review of the record, we cannot say that this judgment was plainly or palpably wrong. In reversing the trial court's judgment, the Court of Civil Appeals impermissibly reweighed the evidence. See Ex parte H.H., 830 So.2d 21, 25-26 (Ala. 2002).
 IV. Conclusion
After reviewing the record, we conclude that the trial court's alimony award and its division of property were not plainly or palpably wrong. Therefore, we reverse the judgment of the Court of Civil Appeals insofar as it reversed portions of the judgment of the trial court, and we remand the case for the Court of Civil Appeals to affirm the judgment of the trial court.
REVERSED AND REMANDED WITH DIRECTIONS.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
[1] The trial court's findings do not include a paragraph numbered 13.