THOMPSON, Presiding Judge.
Gregory Lovett Knight (“the husband”) appeals from a judgment divorcing him from Mary Jean Knight (“the wife”), dividing the marital property, and awarding the wife periodic alimony, among other things.
The record in this case indicates the following. The parties had been married for 40 years at the time they separated and for 43 years at the time of the trial. At the time of the trial, the husband was 60 years old and the wife was 62 years old. During the marriage, they had four children together. At the time of the trial, the children ranged in age from 42 to 22 years old.
The evidence indicates that the husband enlisted in the United States Army after the parties married; thus, all of his military-retirement benefits were earned during the course of the marriage. Documents contained in the record indicate that, before retiring, the husband attained the rank of sergeant major. The only higher enlisted rank is the Sergeant Major of the Army, which is held by only one person at a time.
During the husband’s Army career, the wife moved from post to post with him, including three tours in Germany. The wife testified that she had worked at a factory when the parties were newly married and had also worked in food service. She reared the children and did not work outside the home for most of the marriage. The wife testified that, for the last 15 years of the marriage, she had worked for Walmart and was able to transfer to other Walmart stores when the parties moved. The wife had attended a junior college; the husband had earned both a bachelor’s degree and a master’s degree during the marriage.
At the time of the trial, the wife was a department manager at a Walmart store, earning a gross income of approximately $1,166 every two weeks. The wife’s income-tax return indicated that she earned a total gross income of $34,638 in 2014. However, the wife added that she had been having trouble with her joints. Because her job required her to stand, lift, and bend, she testified, she could not “really do the work that my job requires me to do at Walmart.” Therefore, the wife said, she would be stepping down from the position of department manager to become a sales associate, and her income would decrease as a result.
The husband was a civilian employee with the Department of Defense. He also operated a tax-preparation business “on the side” from which he said he earned little or no income because some of his work was volunteering to prepare tax returns for low-income people. The husband testified that, after his deductions, his adjusted gross income for 2014 was $124,766. He said that his total gross annual income, including his military-retirement pay, was approximately $160,000. Therefore, during the last year of the marriage, the parties had a combined gross income of approximately $190,000. The husband acknowledged that, because of the length of the marriage, the wife was “authorized” to receive half of his military-retirement income. Even when that amount was deducted from his income, the husband said, he would still be earning approximately $120,000 annually. The husband testified that he had suffered a mild heart attack during the litigation of this matter and that he suffered from depression and anxiety. The husband said that, although he had not been advised against working, he planned on retiring, which, he said, will affect his income.
*692 The wife testified that, during the marriage, the parties used the husband’s income to pay rent, utilities, and other household bills, including grocery bills. She was able to use her income to buy “something pretty for the house.” She also said that she paid for her own. clothes and bought expensive purses. The husband used to buy her expensive perfume, the wife said. Although the wife had purchased purses and perfume for herself since the parties separated, .the wife said, she had had to charge the purchases. Evidence indicated that the wife had approximately $1,000 in credit debt at the time of the hearing.
Since the parties separated, the wife testified, she has had to change the way she lives, adding that she “was kind of crippled when [the husband] left” because she had to pay household bills from her own income. The wife testified that if she were awarded $3,000 a month in periodic alimony, she “can still live the way I lived when [the husband] was with me.” In fact, the husband testified that he had “agreed to give [the wife] some alimony,” but, he said, he could not maintain that obligation once he retired.
' Aside from the husband’s military-retirement benefits, the largest marital asset of the parties is the marital residence. The husband and the wife both testified that, at the time of the trial, the balance owed on the marital residence was approximately, $73,000. The husband ■ testified that the monthly mortgage payment was $724.80. The -tax assessment for the 2014 tax year appraised the marital residence at $147,700.
- The husband testified that he had -a number- of financial accounts, including a federal thrift-savings-plan account that had a balance of $34,588.33 as of December 31, 2014, and to which the husband, had continued to contribute monthly; a Charles Schwab account, which, in February 2015, had a balance of $20,643.11; and a Roth Individual Retirement Account (“IRA”) that had a balance of $19,354.01 in February 2015 and to which the husband continued to contribute monthly. The husband testified that he had borrowed a total of $13,130 from the IRA in 2013 and 2014. The husband also had a federal civil-service retirement plan; however, it is not clear from the record the balance of the civil-service retirement plan, The husband and the wife had a joint investment account that had a balance of $3,079.83. The husband testified that he believed that he and the wife should each have a one-half interest in that investment account.
The wife testified that she had a 401(k) account at Walmart that had a balance of approximately $31,000 in September 2012, but, she said, she had removed $10,000 from that account and placed it in an account at Merrill Lynch. The wife also had a Walmart-associate stock plan valued at $25,265 on April 10, 2015, a, Redstone Arsenal Credit Union, money-market account with a balance of approximately $16,000, a credit-union savings account with a balance of approximately $2,000, and an investment account with a balance of approximately $20,670, The wife, said that she and the husband held another investment account together that had a balance of $24,168.
At the time of the trial, the husband drove a 2004 Chevrolet Suburban sport-utility vehicle, and the wife drove a 2006 Honda Pilot sport-utility vehicle. No debt was owed on either vehicle.
On June 18, 2015, the trial court entered a judgment divorcing the parties. In the judgment, the trial court awarded the husband the marital residence, but ordered him to pay the wife $25,000, which the trial court found represented half of the equity that could be derived from the sale of the *693 marital residence. The trial court also awarded the wife one-half of the husband’s disposable military-retirement pay each month, as well as one-half of their joint investment account with a balance of $24,168. Each party was awarded the financial accounts held in his or her name, meaning the husband received accounts totaling approximately $87,500, including the $13,000 he had borrowed from his IRA, and the wife received financial accounts totaling approximately $93,000. Each was ordered to be responsible for his or her own debt. Each party was awarded certain personal property and the vehicle he or she was driving at the time the judgment was entered. The value of that personal property is not contained in the record. The husband was ordered to continue to maintain the wife’s health-insurance coverage “until such time as [the] wife can become independently insured” under her own primary and secondary health-insurance plans similar to those under which she was covered during the marriage, and he was also ordered to continue to maintain the existing $100,000 life-insurance policy, or a policy with the equivalent face value, as long as the husband was obligated to pay alimony to the wife. Finally, the trial court ordered the husband to pay the wife $2,000 a month in periodic alimony.
Both parties filed motions to alter, amend, or vacate the judgment. On September 15, 2015, after a hearing on the motions, the trial court amended the judgment to order the wife to vacate the marital residence within 30 days. All other claims the parties made in the respective motions were denied. The husband filed a timely notice of appeal.
The husband contends that the trial court abused its discretion in awarding the wife periodic alimony because, he says, the wife failed to establish the standard of living she had during the marriage; the trial court did not consider the wife’s earning capacity and assets; the award leaves the husband “financially crippled”; and the evidence does not support an award of alimony. Because these contentions are interrelated, we will discuss them together.
It has long been the law that both “the award and [the] amount of periodic alimony are matters which lie within the discretion of the trial court and may be reversed upon an appeal only for a clear abuse of the trial court’s judicial discretion.” Scott v. Scott, 460 So.2d 1331, 1332 (Ala.Civ.App.1984); Groenendyke v. Groenendyke, 491 So.2d 959, 961 (Ala.Civ.App.1986) (same); and Holmes v. Holmes, 409 So.2d 867, 868 (Ala.Civ.App.1982)(same),
“ * “ ‘A trial court’s determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993). Moreover, issues of alimony and property division must be considered together, and the trial court’s judgment will not be disturbed absent a finding that it is unsupported by the evidence so as to amount to an abuse of discretion. Id.’
“ ‘ “Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ.App.1996)...,
“‘ “ ‘The trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties’ property. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala.Civ.App.1989). Its judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence ... as to be unjust and palpably wrong. Grimsley, 545 So.2d at 76. However, that judgment is subject to review and revi *694 sion. Moody v. Moody, 641 So.2d 818, 820 (Ala.Civ.App.1994). This Court must consider the issues of property division and alimony together when l-eviewing the decision of the trial court, Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1996), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623 (Ala.Civ.App.1993).’
“‘“Bushnell v. Bushnell, 713 So.2d 962, 964-65 (Ala.Civ.App.1997).” ’
“Ex parte Foley, 864 So.2d 1094, 1097 (Ala.2003)(quoting Ex parte Drummond, 785 So.2d 358, 360-61 (Ala.2000)).”
Ex parte Moore, 873 So.2d 1161, 1165-66 (Ala.2003). Moreover, “ ‘[w]e note that there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.’ Yohey v. Yohey, 890 So.2d 160, 164 (Ala.Civ.App.2004).” Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
In this case, the husband relies on language in the relatively recent opinion of Shewbart v. Shewbart, 64 So.3d 1080, 1087-88 (Ala.Civ.App.2010), to argue that the wife was required to establish that she needed periodic alimony to pay expenses that exceed what she was able to pay from her own income, including her share of the husband’s military-retirement pay and the assets she received from the division of marital property. The husband asserts that the evidence indicated that the wife had sufficient income and assets to pay the monthly expenses she had established at trial. Therefore, the husband contends, the trial court abused its discretion in awarding her any periodic alimony.
“ ‘Matters such as alimony and property division are within the sound discretion of the trial court. Ex parte Drummond, 785 So.2d 358 (Ala.2000); Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993); and Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ.App.1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App.1996).
‘“In dividing property and awarding alimony, a trial court should consider “the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; [the parties’] station[s] in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the cause of the divorce.” Russell v. Russell, 777 So.2d 731, 733 (Ala.Civ.App.2000). Also, a trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996); and Brewer v. Brewer, 695 So.2d 1 (Ala.Civ.App.1996). “A property division that favors one party over another does not necessarily indicate an abuse of discretion.” Fell v. Fell, 869 So.2d 486, 496 (Ala.Civ.App.2003) (citing Dobbs v. Dobbs, 534 So.2d 621 (Ala.Civ.App.1988)).’
“Turnbo v. Turnbo, 938 So.2d 425, 429-30 (Ala.Civ.App.2006).”
Walker v. Walker, 216 So.3d 1262, 1270-71 (Ala.Civ.App.2016).
Shewbart, supra, the case the husband primarily relies upon in his argument as to this issue, involved the issue of whether the trial court had abused its discretion in failing to award the wife in that case periodic alimony. In determining that the trial court had not erred as to that issue, this *695 court recognized that the decision whether to award periodic alimony rests in the sound discretion of the trial court. 64 So.3d at 1087. We also recognized that, in considering an award of periodic alimony, the trial court is to take into account the “equitable considerations” of the length of the marriage, the standard of living to which the parties became accustomed during the marriage, the relative fault of the parties for the breakdown of the marriage, the ages and health of the parties, and the future employment prospects of the parties. Id.
The opinion in Shewbart correctly stated that a spouse “proves a need for periodic alimony by showing that without such financial support he or she will be unable to maintain the parties’ former marital lifestyle,” id., and that courts are to consider the paying spouse’s ability to meet that need. Id. at 1088. We concluded that the wife in Shewbart had demonstrated that she would be unable to meet all of her financial needs without any periodic alimony but that, based on the trial court’s determination of the husband’s limited income, and the wife’s failure to argue that the husband could pay periodic alimony from that limited income, the trial court had not abused its discretion in refusing to order the husband to pay periodic alimony. Id.-at 1090-91.
In the present case, the husband would have this court disregard the many factors this court has historically considered in reviewing whether a trial court abused its discretion in awarding periodic alimony and in determining the amount of such an award. Instead, the husband asks this court to look only to the wife’s monthly budget, her income, and the assets she received in the division of prpperty when determining whether an award of periodic alimony is proper. ■ The husband’s argument improperly reduces the determination of whether and how much a party is to receive as periodic alimony - to a rigid mathematical calculation based strictly on the petitioning spouse’s proven monthly expenses on the day of the trial. We note that, in McCarron v. McCarron, 168 So.3d 68, 76 (Ala.Civ.App.2014), this court wrote:
“As a first step toward proving a need for • periodic alimony, ‘a petitioning spouse should ... establish the standard and mode of living of the parties during the marriage and the nature of the financial costs to the parties of maintaining that station in life.’ Shewbart, 64 So.3d at 1088. Although submitting an itemized monthly budget may be a preferred practice, nothing in the law requires a spouse to submit such a budget to the trial court in order to meet that evidentiary burden, as the husband contends. Because of the broad discretion.ary power of a trial court over an award of periodic alimony, see Shewbart, 64 So.3d at 1087, a petitioning spouse need only .present sufficient evidence from which the trial court can reasonably infer the costs associated with the marital standard of living. See generally Grocholski v. Grocholski, 89 So.3d 123 (Ala.Civ.App.2011); 32 Am.Jur. Proof of Facts 2d 439, Spousal Support on Termination of Marriage (1982).”
(Emphasis added.)
Although courts should consider each party’s monthly expenses and his or her ability to pay-those expenses when determining-if periodic alimony is due to be paid and, if so, the amount of periodic alimony to be paid to the dependent spouse, the amount of the dependent spouse’s current living expenses is not the sole determinative factor, and a trial court making these determinations should not-exclude consideration of all the other relevant factors listed above. In O’Neal v. O’Neal, 678 *696 So.2d 161, 164-65 (Ala.Civ.App.1996), this court wrote: .
“This court has long recognized that the purpose of periodic alimony is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage. Alabama’s alimony statutes have their genesis in §§ 1970, 1971, and 1972; Code of Alabama 1852. This statutory scheme has served a crucial legislative policy— to provide alimony upon the demise of a marriage in order to preserve the economic status of the parties as it existed during the' marriage. Orr v. Orr, 374 So.2d 895 (Ala.Civ.App.), writ denied, 374 So.2d 898 (Ala.1979), cert. denied and appeal dismissed, 444 U.S. 1060, 100 S.Ct. 993, 62 L.Ed.2d 738 (1980). See also, Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974) (periodic alimony is an allowance for future support of the wife). This court has followed this legislative intent and recognized that the purpose of periodic alimony is to preserve, insofar as possible, the economic status or the status of the parties as it existed during the marriage. See, e.g., Grice v. Grice, 673 So.2d 772 (Ala.Civ.App.1995); Albertson v. Albertson, [678 So.2d 118 (Ala.Civ.App.1995) ]; Duckett v. Duckett, 669 So.2d 195 (Ala.Civ.App.1995); Carter v. Carter, 666 So.2d 28 (Ala.Civ.App.1995) (‘Periodic alimony is an allowance for future support of the [former dependent spouse]...-.’); Craft v. Craft, 647 So.2d 781 (Ala.Civ.App.1994); Gibbs v. Gibbs, 653 So.2d 300 (Ala.Civ.App.1994); Laws v. Laws, 653 So.2d 293 (Ala.Civ.App.1994); Hewitt v. Hewitt, 637 So.2d 1382 (Ala.Civ.App.1994); Goeman v. Goeman, 646 So.2d 68 (Ala.Civ.App.1994); Wilbanks v. Wilbanks, 624 So.2d 605 (Ala.Civ.App.1993); Seamon v. Seamon, 587 So.2d 333 (Ala.Civ.App.1991); Daugherty v. Daugherty, 579 So.2d 1377 (Ala.Civ.App.1991); Grimsley v. Grimsley; 545 So.2d 75 (Ala.Civ.App.1989); Kuhnel v. Kuhnel, 535 So.2d 164 (Ala.Civ.App.1988); Carnaggio v. Carnaggio, 475 So.2d 861 (Ala.Civ.App.1985); Huldtquist v. Huldtquist, 465 So.2d 1146 (Ala.Civ.App.1984); West v. West, 437 So.2d 583 (Ala.Civ.App.1983); Madden v. Madden, 399 So.2d 304 (Ala.Civ.App.1981); Dees v. Dees, 390 So.2d 1060 (Ala.Civ.App.1980).
“We acknowledge • that' recently this court has stated that the sole purpose of periodic alimony is to support the former dependent spouse. See, e.g., Totty v. Totty, 681 So.2d 161 (Ala.Civ.App.1995); Newton v. Newton, 655 So.2d 1033 (Ala.Civ.App.1995); Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994); Thornburg v. Thornburg, 628 So.2d 885 (Ala.Civ.App.1993); Trammell-v. Trammell, 589 So.2d 743 (Ala.Civ.App.1991). This abbreviated statement -found its genesis in Waltman v. Waltman, 528 So.2d 867 (Ala.Civ.App.1988). In Walt-man, this court stated that because the sole purpose of periodic alimony is the support of the dependent spouse, -the trial court may terminate periodic alimony when it is no longer necessary for such support. 528 So.2d at. 868. This court reasoned that when periodic alimony is no longer necessary for the support of the former dependent spouse, it may be terminated upon petition of the payor spouse. This reasoning comports with the long-standing purpose of periodic alimony. The abbreviated statement later enunciated in the cases cited above does not comport with the longstanding purpose of periodic alimony. Under this abbreviated statement, any spouse who earns an income sufficient *697 for that spouse to live independent of contributions from the payor spouse, is not entitled to periodic alimony regardless of the economic status of the parties during the marriage. This contradicts the legislative intent of periodic alimony.
“The purpose of periodic alimony is to support the former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until the spouse is self-supporting or maintaining a status similar to the one enjoyed during the marriage. Under this standard, the trial court’s award of $1,500 per month as periodic alimony to the wife was not an abuse of discretion. The wife’s income of $40,000 is not sufficient to maintain the economic status the parties enjoyed during the marriage. Therefore, the award of periodic alimony was not an abuse of discretion.”
(Emphasis added.) See also Ex parte Moore, 873 So.2d at 1166 (explaining the purpose of periodic alimony).
In this case, the record indicates that the parties had been married for 40 years at the time they separated and for 43 years at the time of the trial. Both parties were nearing the traditional retirement age, and both were experiencing various health issues that the parties said were affecting their abilities to work. At the time of the trial, the wife was earning a gross income of approximately $1,166 every two weeks. The wife’s income-tax return indicated that she earned a total gross income of $34,638 in 2014. The husband testified that his total gross annual income, including his military-retirement pay, was approximately $160,000. He said that, after his deductions, his adjusted gross income for 2014 was $124,766. The husband conceded that the wife was “authorized” to receive half of his military-retirement pay,[1] Even when that amount was deducted from his income, the husband said, he would still be earning approximately $120,000 annually.
The evidence suggests that the wife will be able to meet her postdivorce monthly expenses with her income and her share of the husband’s military-retirement account. However, being able to meet one’s monthly expenses does not equate to being able to engage in the lifestyle—to the extent possible—that one had while married. In this case, the parties had sufficient income to meet unexpected expenses like home and vehicle repairs, or unexpected medical expenses, and the wife was able to use some of her income for' luxuries rather than for necessities. See O’Neal, 678 So.2d at 165, and Ex parte Foley, 864 So.2d 1094, 1097-98 (Ala.2003).
As to the husband’s assertion that the award of periodic alimony to the wife will financially cripple him, the husband testi- *698 fíed that his “fixed” expenditures each month, including “rent,” insurance, and “other items that I have to pay on a monthly basis” totaled $2,619. He then testified to what he characterized his “flexible” expenses, including food expenses; transportation costs of $577; one child’s tuition of $750, which is paid quarterly, and books and allowance of $925 a month; his debt of $890; and unidentified “miscellaneous expenses” of $934, which, he said, brought his total monthly expenses to $10,041. The husband’s enumerated expenses total $6,695 each month, and this court is unable to discern from the record how the husband reached his figure of $10,041 in monthly expenses.
The evidence indicated that the mortgage payment on the marital residence was $724.80 and that there was no debt on the husband’s vehicle. The trial court, who observed the witnesses as they testified, could have determined that the husband had exaggerated the amount of his monthly expenses. Furthermore, the husband testified at the trial that, after all of his expenses were paid, he was left with “maybe $3,000.” Based on the evidence, the trial court could have rejected the husband’s contention that the award of periodic alimony to the wife leaves him financially crippled. We note, however, that, once the husband retires, he would be entitled to seek a reduction to his obligation to pay periodic alimony based upon a showing of a material change in circumstances since the entry of the divorce judgment.
After hearing all the evidence in this case, the trial court determined that the wife was to receive periodic alimony in the amount of $2,000 a month. In considering equitable factors such as the large discrepancy between the husband’s income and earning capacity, and the wife’s income and earning capacity, the parties’ 40-year marriage, their ages and health, their respective expenses, and the husband’s ability to pay, we conclude that substantial evidence supports the trial court’s judgment to award the wife periodic alimony.
The husband also argues that the trial court abused its discretion in dividing his military-retirement benefits because, he says, the division effectively awarded the wife more than half of his military-retirement pay. The husband cites that portion of the trial court’s judgment that provides that the wife “shall remain the beneficiary” of the husband’s military Survivor Benefit Plan (“SBP”) and further directs that the premium for the SBP coverage is to be deducted from the husband’s gross military-retirement pay before that pay is divided between the parties. By requiring the husband to pay the SBP premium, the husband says, the trial court “effectively awards the wife a greater portion of the military retirement than 50%, which is more than is allowed by law.”
The record indicates that, at the time of trial, $332.15 was deducted each month from the husband’s military-retirement pay for the cost of the SBP premium. A review of the record indicates that the husband told the trial court that the wife was entitled to remain the beneficiary of the SBP. He testified that, under the SBP, if he died before the wife, she would continue to receive a percentage of his military-retirement pay. The husband also testified that the wife was “authorized” to keep the SBP that he had selected upon his retirement from the Army. When asked whether the SBP was something the trial court should include in the divorce judgment, the husband responded: “I agree he should include that but, then, also determine how it’s going to be paid for— whether it is paid for by both or by one individual.” He added that whether the SBP premium should be deducted from his *699 military-retirement pay before the division of his pay was “something that would have to be worked out with the military finance office to get that done.” Later in the trial, the husband told the trial court: “In terms of the cost of survivor benefits, I agree that that is something that [the wife] should get.... I agree she deserves it.”
Based on the husband’s acknowledgment at trial that the wife is entitled to remain the beneficiary of the SBP and the husband’s argument on appeal that, by requiring “that the cost of surviv- or benefits be paid out of the gross retirement before division,” we understand the husband’s argument to be that the trial court abused its discretion in ordering the payment of the SBP premium before the division of the husband’s military-retirement pay and not that it abused its discretion in ordering that the wife was to remain the beneficiary of the SBP. To the extent the argument can be construed as challenging the order that the wife is to remain the beneficiary, that argument would constitute invited error. As this court wrote in Casey v. McConnell, 975 So.2d 384, 389 (Ala.Civ.App.2007):
“The law is well settled that ‘[a] party may not predicate an argument for reversal on “invited error,” that is, “error into which he has led or lulled the trial court.”’ Atkins v. Lee, 603 So.2d 937, 945 (Ala.1992) (quoting Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So.2d 591, 595 (1971)). The doctrine of invited error ‘provides that a party may not complain of error into which he has led the court.’ Ex parte King, 643 So.2d 1364, 1366 (Ala. 1993). In other words, ‘[a] party cannot win a reversal on an error that party has invited the trial court to commit.’ Neal v. Neal, 856 So.2d 766, 784 (Ala.2002). See also Liberty Nat’l Life Ins. Co. v. Beasley, 466 So.2d 935, 937 (Ala.1985); and State Farm Mut. Auto. Ins. Co. v. Humphres, 293 Ala. 413, 418, 304 So.2d 573, 577 (1974).”
Because the husband conceded to the trial court that the wife was “authorized” to remain the beneficiary of the SBP and was entitled to a portion of his military-retirement income if he died before the wife, this court will not now hold the trial court in error for directing that the wife remain the beneficiary of the SBP.
To the extent that the husband argues that the trial court erred in ordering the payment of the premium from his military-retirement pay each month before that pay is divided between the parties, that contention, too, must fail. We first note that the husband does not elaborate as to how payment of the premium “effectively” awards the wife more than half of the husband’s military-retirement pay. Because the premium is deducted before the division of the military-retirement pay, the pool of money that is being divided is less for both parties, not just for the husband.
Moreover, the authorities the husband relies on in support of his argument as to this issue do not involve a challenge to the payment of premiums for survivor-benefit plans. The husband cites § 30-2-51(b)(3), Ala.Code 1975, which provides that “[t]he total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.” He also relies on this court’s decisions in Capone v. Capone, 962 So.2d 835, 841 (Ala.Civ.App.2006), and Wheeler v. Wheeler, 831 So.2d 629, 635 (Ala.Civ.App.2002). In Capone, this court held that an award of survivor benefits in the context of a division of military-retirement benefits “potentially violates § 30-2-51(b), partly because such an award could potentially award one spouse an amount in *700 excess of 50% of the other spouse’s retirement' benefits.” 962 So.2d at 841. However, as discussed above, the husband told the trial court that the wife was authorized to receive benefits under the SBP, and we will not hold the trial court in error for entering a judgment consistent with the husband’s statements.[2]
“It is the appellant’s burden to refer this Court to legal authority that supports its argument. Rule 28(a)(10), Ala. R.App. P., requires that the argument in an appellant’s brief include ‘citations to the.cases, statutes, [and] other authorities ... relied on.’. Consistent with Rule 28, ‘[w]e have stated that it is not the function of this court to do a party’s legal research.’ Spradlin v. Spradlin, 601 So.2d 76, 78 (Ala.1992) (citing Henderson v. Alabama A & M University, 483 So.2d 392, 392 (Ala.1986) (‘ “Where an appellant fails to cite any authority, we may affirm, for it, is neither our duty nor function to perform all the legal research for an appellant.” Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984).’)).”
Board of Water & Sewer Comm’rs of City of Mobile v. Bill Harbert Constr. Co., 27 So.3d 1223, 1254 (Ala.2009). The husband has not cited any authority or advanced a cogent legal argument to demonstrate how the trial court erred or abused its discretion in ordering the SBP premium to be paid -from the husband’s military-retirement pay before that pay is divided. Accordingly, we affirm the trial court’s judgment as to this issue.
The husbánd also asserts that, “[w]hen taken together with alimony and the survivor benefit award, the division of military retirement, is unjust and inequitable.” Just as he did in agreeing that the wifé was entitled to remain the beneficiary of the SBP, the husband testified that the wife was “authorized to get 50% of retired military pay, based on the length of marriage.” Again, the doctrine of invited error prevents this court from holding the trial court in error as to this issue. Casey, supra.
The husband contends that the trial court’s judgment awarding the wife 50% of the husband’s disposable military-retirement pay each month is ambiguous. He states that “it is unclear what the husband’s obligation is.” The husband then sets out what he says is a “strict formula for the division of military retirement.” However, he cites no authority as to the origination of that formula, and he’cites no authority in support of the proposition that the trial court must use the formula when *701 dividing military-retirement pay between divorcing spouses. Because the husband cited ho authority in support of his argument, we affirm the judgment as to this issue. See Board of Water & Sewer Comm’rs of City of Mobile, supra.
The husband also briefly asserts that the trial court’s award of a set level of the husband’s existing military-retirement pay, without any deductions for disability compensation, improperly denies the husband the right to increase the amount of disability benefits he receives. Again, the husband cites no authority and makes no legal argument in support of his contention. Moreover, the husband’s argument, is contrary to Alabama law. In Stone v. Stone, 26 So.3d at 1238-39, this court reviewed opinions from a number of jurisdictions and concluded that a state court may properly limit a military member’s ability to unilaterally modify the benefits owed to a former spouse from the member’s retirement pay. Based on Stone and the husband’s failure to cite any authority in support of his argument, see Board of Water & Sewer Comm’rs of City of Mobile, the judgment is affirmed as to this issue.
The husband next contends that the trial court abused its discretion by ordering him to “continue to maintain the existing $100,000 life insurance policy” for the benefit of the wife. The husband states that no such policy exists. Therefore, he states, “[t]his becomes an undefined benefit to the wife,”, and, thus, he says, the provision must be reversed. He cites no authority in support of his one-paragraph argument.
The record indicates that the husband testified that he had life insurance through his current job; however, he said, he did not know the value of the policy. He also testified that he had life insurance through another company, the value of which he believed was $50,000. The husband testified that the wife was the beneficiary of that policy. Additionally, the husband testified, the "wife was the beneficiary of a life-insurance policy he had through Army and Air Force Mutual Aid; however, he said, he did not know the value of that policy, either.
“A trial court may include a provision in a divorce judgment requiring a former spouse to maintain a life-insurance policy for the benefit of the other former spouse. Strong v. Strong, 709 So.2d 1259 (Ala.Civ.App.1998). However, our caselaw indicates that it is within the trial court’s discretion whether to order a divorcing spouse to maintain a life-insurance policy for the benefit of the other spouse. See, e.g., Bush v. Bush, 784 So.2d 299, 300 (Ala.Civ.App.2000).”
Ratliff v. Ratliff, 5 So.3d 570, 584 (Ala.Civ.App.2008).
The husband has riot argued that the trial court abused its discretion in establishing the value of life insurance for the benefit of the wife. Thus, any argument the husband could have made as to the propriety of the provision setting the amount of life insurance to be provided for the benefit of the wife is deemed waived. Gary v. Crouch, 923 So.2d 1130, 1136 (Ala.Civ.App.2005) (“[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties aré waived.”); see also Palmer v. Palmer, 192 So.3d 12, 16 (Ala.Civ.App.2015). The husband has failed to demonstrate that the life-insurance policies he had at the time of trial are insufficient to provide the coverage mandated by the trial court. We conclude that, based on the limited argument of the husband, he has failed to demonstrate error as to this issue.
*702 Finally, the husband argues that the trial court abused its discretion in ordering him to provide health insurance to the wife. Once again, the husband cites no binding authority in support of his argument. Accordingly, we will not hold the trial court in error as to this issue. See Board of Water & Sewer Comm’rs of City of Mobile, supra.
The husband has failed to demonstrate that the trial court erred or abused its discretion in entering the divorce judgment in this case. Accordingly, for the reasons set forth above, the judgment of the trial court is affirmed.
AFFIRMED.
PITTMAN and DONALDSON, JJ., concur.
THOMAS, J., concurs in the result, without writing.
MOORE, J., concurs in part and dissents in part, with writing.

, We note that our supreme court has held that "disposable military retirement benefits, as defined by 10 U.S.C. § 1408(a)(4), accumulated during the course of the marriage constitute marital property and, therefore, are subject to equitable division as such.” Ex parte Vaughn, 634 So.2d 533, 536 (Ala. 1993). In fact, because of the lifestyle of military members, the United States Congress has recognized the need to protect the economic interests of former military spouses after a divorce.
"As the United States Senate Committee that initially considered the federal Uniformed Services Former Spouses’ Protection Act, 10 U.S.C.A. § 1408 et seq., ... pointed out, ‘frequent change-of-station moves and the special pressures placed on the military spouse as a homemaker make it extremely difficult to pursue a career affording economic security, job skills and pension protection.’ Senate Report No. 97-502 (1982), reprinted in 1982 U.S.C.C.A.N. 1596, 1601; see also Mansell v. Mansell, 490 U.S. 581, 594, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).”
Stone v. Stone, 26 So.3d at 1236 n. 1.

. We point out that the SBP in this case is a creation of the United States Congress and federal law.
"Congress enacted the legislation creating the SBP in 1972 to provide benefits to surviving spouses and dependent children of deceased military retirees. Act of-Sept. 21, .1972, Pub.L. No. 92-425, 86 Stat. 706 (1972) (codified as amended at 10 U.S.C. §§ 1447-1455). In 1982, Congress expanded the list of potential SBP beneficiaries to include former spouses. See Uniformed Services Former Spouses' Protection. Act, Pub.L. No. 97-252, § 1003, 86 Stat. 706, 735-36 (1982). Upon the deáth of'an SBP participant, his of her beneficiaries receive monthly annuity payments. 10 U.S.C. § 1450(a). If a former spouse who is the beneficiary of an SBP remarries before reaching age 55, the former spouse’s SBP coverage is suspended. 10 U.S.C, § 1450(b)(2). However, if that marriage ‘is terminated by death, annulment, or divorce,’ the former spouse can apply for reinstatement of the suspended former-spouse, coverage. 10 U.S.C, § 1450(b)(3).”
Smith v. McIntosh, 70 So.3d 1277, 1281 (Ala.Civ.App.2011).
In his appellate brief, the husband does not mention the Uniformed Services. Former Spouses’ Protection Act (“the USFSPA”), and, therefore, we are not called on in this case to consider the relationship between the USFS-PA and § 30-2-51(b), Ala.Code 1975.